Maria VEGA, et al.

v.

John W. GASPER.

No. EP–84–CA–259 B.

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 15, 1995.

Mark A. Schneider, El Paso, TX, Texas Rural Legal Aid, Inc., for plaintiffs.

Juan Carlos Garay, Guevara, Rebe, Baumann, Coldwell & Garay, El Paso, TX, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BUNTON, District Judge.

BEFORE THE COURT, in the above-captioned cause of action, a hearing was held on January 18, 1995 in El Paso, Texas. The hearing was called in light of the United States Court of Appeals for the Fifth Circuit opinion filed October 11, 1994, in which the Court of Appeals affirmed in part, reversed in part, vacated in part, and remanded the decision of this Court on April 30, 1991. The Court of Appeals affirmed this Court's award to Plaintiffs of time actually spent working and for liquidated damages with respect thereto. The Court of Appeals reversed the award to Plaintiffs of actual and liquidated damages for travel time to and from the chile pepper fields. Finally, the Court of Appeals vacated the balance of the award and remanded the case for further findings concerning the compensability of the morning and afternoon wait times, findings concerning Defendant Gasper's good faith with respect to any such wait time found compensable, and for recomputation of the ultimate award in light of such findings, their opinion, and the Agricultural Worker Protection Act.

## FINDINGS OF FACT

1. At all times relevant herein, Plaintiffs and class members [hereinafter Plaintiffs] were seasonal agricultural workers engaged in agricultural employment for the Defendant John W. Gasper [hereinafter Gasper].

2. Gasper provided buses from El Paso, Texas, continuing on to Deming, New Mexico, and ultimately to chile pepper fields within the State of New Mexico.

3. At the end of the work day, Gasper provided buses from the chile pepper fields back to El Paso, Texas.

### I. Morning Wait Time

4. The majority of the Plaintiffs lawfully resided in El Paso, Texas when working for Gasper during the 1983 to 1984 chile pepper harvest season.

5. Those Plaintiffs who lived in Ciudad Juarez, Mexico would generally remain in El Paso after returning from the chile pepper fields of New Mexico at approximately 7:00 p.m. until Gasper recruited and transported them early the next morning.

6. Gasper's buses departed El Paso after they were full of workers for that day's chile picking between 1:00 and 2:00 a.m.

7. Although Gasper subsequently had the buses arrive in El Paso earlier than usual, at approximately 11:00 p.m., Gasper nevertheless departed El Paso at the same time as before, between 1:00 and 2:00 a.m.

8. Gasper made the decision of when his buses would leave El Paso based upon his business judgment.

9. If given the choice, Plaintiffs would have preferred sleeping at their own homes instead of on the buses, and preferred to leave the recruitment area between 5:00 and 6:00 a.m. for that day's chile picking.

10. After driving for about two hours the buses would arrive in Deming, New Mexico. The buses refueled and the Plaintiffs disembarked to use the restroom and/or purchase breakfast. It was at this time that the Plaintiffs were informed which chile pepper field they would be picking that day. The Deming stop lasted between thirty minutes and one hour.

11. The buses would arrive at the chile pepper field between 4:30 and 5:30 a.m. The Plaintiffs had to wait at the field for at least one hour for the sun to rise to begin working. Plaintiffs were engaged to wait; however, due to the darkness of the early morning, were unable to begin working until the sun rose sufficiently for them to see what they were picking. They could not effectively use this "engaged to wait" time for their own use.

12. Gasper was paid according to the pounds of chile peppers harvested; therefore, he was benefitted by the early arrival at the field so that the workers could start the harvest at sunrise.

### II. Afternoon Wait Time

13. The day-haul employment system by Gasper was devised to serve the business needs of Gasper and not the farmers with whom he contracted with or the workers he hired.

14. Gasper chose to hire the workers on a daily basis.

15. Gasper chose to pay the workers in cash at the end of each day. He chose to devise a payroll system that required at least a two hour wait per day to pay all the workers.

16. Gasper required the workers to line up and have their tokens counted, provide payroll information to his bookkeeper, and receive their pay each day after finishing their chile picking.

17. Gasper's bookkeeper wrote down the name, address, and social security number of each worker, each day after chile picking.

18. Gasper's bookkeeper counted each worker's tokens each day.

19. At the end of the work day, Gasper went into Deming to cash his check from the farmer. Gasper used that money to pay the workers.

20. The workers could not get paid for their day's work until Gasper cashed his check from the farmer.

21. The Department of Labor in El Paso told farm labor contractors at regular information meetings that the pay system de-

scribed herein was inefficient. The Department of Labor recommended other feasible pay systems.

22. There are other feasible pay systems which Gasper chose not to use. The workers were willing to accept checks or to be paid on a weekly basis.

23. The pay system devised by Gasper was extremely inefficient. This system was for the benefit of Gasper.

24. The afternoon waiting period lasted about two hours a day.

25. The Plaintiffs were unable to effectively use this time for themselves because they were in an isolated field, thirty minutes away from the nearest town of Deming, with only Gasper's buses for transportation.

26. The Court finds the Plaintiffs Jose Pacheco and Maria Vega gave credible and consistent testimony regarding the facts of this case.

### III. *Liquidated Damages*

27. There has been no evidence presented to the Court by Gasper that his failure to pay the minimum wage to the Plaintiffs for wait time was in good faith and based on reasonable grounds.

28. In 1978, the Department of Labor issued Opinion Letter No. 1507 stating that wait time in the fields is generally compensable since the workers are unable to use the time effectively for their own purposes and such time is controlled by the employer.

29. Gasper presents no evidence of receiving either an official Department of Labor opinion or being directed by a Department of Labor representative that he was exempt from compensating the workers for wait time.

30. Between 1977 and 1983, the Department of Labor in El Paso did not tell farm labor contractors that they did not have to pay for wait time in the fields.

31. Gasper never received a formal legal opinion from an attorney who explored the law or the industry custom.

32. The expert testimony of the ex-manager of the Department of Labor Wage and Hour Division, Joseph Wysong, is found to be credible.

### CONCLUSIONS OF LAW

#### I. *Morning Wait Time*

1. The Fifth Circuit Court of Appeals remanded this action, in part, for further findings regarding the purpose of the morning wait time. *Vega v. Gasper*, 36 F.3d 417, 427 (5th Cir.1994).

2. Wait time is compensable if: 1) the time predominately benefits the employer, and 2) the time cannot be effectively used by the employees for their own purposes. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411–13 (5th Cir.1990).

3. The Fifth Circuit in its analysis of the morning wait time stated:

> Although Gasper arranged for the bus to arrive in El Paso two hours early to accommodate the workers, it is unclear whether the bus *departed* El Paso any earlier. Findings on this issue should be made on remand. *If the bus left El Paso at the same time as before the schedule change and arrived in the fields at the same time, then it is probable that the morning wait at the fields was predominately for the benefit of Gasper.*

*Vega*, 36 F.3d at 426 n. 7 (emphasis supplied).

4. The Court determines that although Gasper subsequently changed the schedule for arrival of his buses in El Paso, he nevertheless departed El Paso at the same time as before the schedule change, between 1:00 and 2:00 a.m. Moreover, Gasper's buses arrived at the chile fields in New Mexico at the same time as before the schedule change, between 4:30 and 5:30 a.m.

5. The Court finds the morning wait time in the fields to be one hour.

6. Gasper's buses arrived at the fields early to be able to start promptly at sunrise for his own benefit and business purposes.

7. While in the fields before sunrise, none of the Plaintiffs were able to use their time effectively for their own purposes.

8. It was Gasper's sole decision to depart from El Paso at a particular time, stop in

Deming, and have the Plaintiffs wait in the dark fields while the sun rose. Therefore, the Court holds that the one hour morning wait time in the fields was for the benefit of Gasper and is compensable under the Fair Labor Standards Act, 29 U.S.C. § 254 [hereinafter FLSA].

## II. *Afternoon Wait Time*

■ 9. The Fifth Circuit Court of Appeals further remanded this action for findings regarding the purpose of the afternoon wait time. *Vega,* 36 F.3d at 427.

10. The criteria for compensation of the afternoon wait time is identical to that of the morning wait time stated above. *supra* ¶ 2.

11. The Fifth Circuit in its analysis of the afternoon wait time quoted *Sedano v. Mercado dba M & M Custom Farming,* 124 Lab. Cas. (CCH) ¶ 35,756 (February 12, 1993):

"Time spent waiting for Defendant Jara to complete his payroll records in the afternoon is predominantly for the benefit of the employer. Because of the isolation of the chile fields and the need to wait for their turn to give ... Jara payroll information and their tokens, workers cannot use this time effectively for their own benefit." For example, if the afternoon wait resulted from Gasper's decision to have his employees wait while he cashed the farmer's check, then the wait benefits Gasper and is compensable. Gasper owes wages to his employees whether or not the farmer pays Gasper. If, on the other hand, Gasper's pay system is reasonably efficient, but the wait results from the number of employees involved, then the wait is not compensable.... The *Sedano* case provides an example of the type of fact findings needed to support an FLSA claim respecting wait time.

*Vega,* 36 F.3d at 427.

12. The *Sedano* court found the following facts:

[¶] 2. As part of his work for Ralph Mercado and M & M Custom Farming, Defendant Jara recruits and transports farm workers from El Paso to Mercado operated farms in southern New Mexico. The workers leave and return the same day.

[¶] 3. Defendant Jara transported workers in a converted school bus and in a van from El Paso to New Mexico and back.

. . .

[¶] 8. Defendant Jara's payroll system requires workers to wait in line each day to give payroll information to him or to one of his employees. Defendant Jara handwrites a new list of workers each day. He pays workers piecerate [sic] by a "token" system, requiring workers to give him a token for each bucket they have picked, which he then counts.

[¶] 9. This payroll system primarily benefits Defendant Jara.

*Sedano,* 124 Lab.Cas. (CCH) ¶ 35,756.

13. The Court determines Gasper's payroll system was virtually identical to the one described in *Sedano.* Gasper's workers had to wait in line each day to give payroll information and to submit their tokens for counting. They were in an isolated chile field and could not otherwise effectively use this time for themselves. The payroll lists and receipts were newly handwritten each day. Gasper had to cash his check from the farmer in order to pay his workers in cash. The workers had to wait to be paid before they could return home to El Paso.

14. The Court finds the afternoon wait time in the fields to be two hours.

15. Gasper's payroll system was extremely inefficient and was for the benefit of Gasper. The daily trek to his bank in Deming to cash the farmer's check could have been facilitated if Gasper had instead chosen to issue checks to the workers either daily or weekly. Gasper could have paid the workers in cash on the bus trip home, yet chose not to. Instead, the workers were required to wait in the fields in the afternoon heat for Gasper's benefit and at his request. The Department of Labor notified farm labor contractors in El Paso, such as Gasper, that daily payments in cash was not a good system. It was an incident of Gasper's business decision to hire and pay the workers on a daily basis in cash.

16. The Court concludes the afternoon wait time served Gasper as a result of his burdensome pay system and that the Plain-

tiffs could not effectively use this time for their own purposes. Therefore, the afternoon wait time of two hours is compensable under the FLSA 29 U.S.C. § 254.

### III. *Liquidated Damages*

■ 17. An employer who violates the FLSA is liable for the amount of the workers' unpaid wages and, in addition, an equal amount as liquidated damages. 29 U.S.C. § 216(b)

18. If there is a satisfactory showing to the Court by Gasper that the act or omission giving rise to the action was in good faith and he had reasonable grounds for believing his act or omission was not a violation of the FLSA, then the Court may reduce or decline to award liquidated damages. 29 U.S.C. § 260.

19. According to the Fifth Circuit:

Good faith involves showing that Gasper thought he was paying his workers in compliance with the FLSA's minimum wage rule. Gasper's reliance on industry custom as proof of good faith is of greater relevance, but is not necessarily controlling under this record. In *Kimball v. Goodyear Tire & Rubber,* 504 F.Supp. 544, 549 (E.D.Tex.1980), the court said that acting on advice of counsel who explored industry custom showed good faith. Here, at most, Gasper stated that he attended Department of Labor information meetings for farm labor contractors.

*Vega,* 36 F.3d at 428 n. 9.

20. According to the testimony of Mr. Joseph Wysong, ex-manager of the Department of Labor Wage and Hour Division, the Department of Labor issued Opinion Letter No. 1507, stating that wait time in the field is generally compensable. Further, between 1977 and 1983, the Department of Labor in El Paso did not tell farm labor contractors that they did not have to pay for wait time in the fields. Gasper has never received a formal legal opinion from an attorney who explored the law or industry custom.

21. The Court concludes that if Gasper had asked for such information, the Department of Labor in El Paso would have informed him that the wait time was compensable.

22. The most good faith and reasonable grounds Gasper evidenced was sporadic attendance at Department of Labor information meetings for farm labor contractors. Citing the numerous violations of Department of Labor regulations, the Court finds that Gasper did not try to abide by the law, and in many cases tried to circumvent the law for his own gain. Some of the violations included *inter alia:* hiring of unregistered farm labor contract employees (1979, 1980 & 1981), failure to obtain insurance for his buses (1980), incomplete or inaccurate record keeping (1981), failure to provide wage statements to workers and engaging illegal aliens (1986), failure to post Migrant and Seasonal Agricultural Worker Protection Act poster and transporting workers without certification authorization (1988). Further, Gasper's alteration of his payroll records is an indication of his general lack of good faith in his failure to pay the minimum wage to Plaintiffs.

23. 29 U.S.C. § 260 requires Gasper to prove both good faith *and* reasonable grounds for his violation. The Court concludes Gasper has not showed good faith or reasonable grounds in failing to pay Plaintiffs for morning or afternoon wait times. Therefore, pursuant to 29 U.S.C. § 216, Gasper is liable to Plaintiffs for an equal amount of lost wages as liquidated damages.

### IV. *Damages Under AWPA*

■ 24. The Fifth Circuit Court of Appeals authorized this Court to reconsider the zero award to the nine named Plaintiffs under the Migrant and Seasonal Agricultural Workers Protection Act [hereinafter AWPA], 29 U.S.C. § 1831, in light of the reduction of their damages for travel time under the FLSA.

25. The Court in *Beliz v. W.H. McLeod & Sons Packing Co.,* construed the purpose of damage awards for violations of the Farm Labor Contractor Registration Act [FLCRA], 7 U.S.C. § 2041, the predecessor of the AWPA, as follows:

Deterrent effect may be achieved without awarding exemplary damages. Whether

an award accomplishes this purpose ... is determined by considering not only the amount allowed to each plaintiff for each violation but also the total amount of the award, the nature and persistence of the violations, the extent of the defendant's culpability, damages awards in similar cases, the defendant's ability to prevent future violations of the Act, the substantive or technical nature of the violations, and the circumstances of each case. Plainly, it ought not to be cheaper to violate the Act and be sued than to comply with the statutory requirements.... Further, the legislative history of the Act notes that farm workers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations. Awards should be adequate to encourage workers to assert their statutory rights.

765 F.2d 1317, 1332–33 (5th Cir.1985) (footnotes omitted).

26. Gasper has a long history of repeated violations of the FLCRA and the AWPA with the Department of Labor. The Department's small assessments against Gasper did not deter him from a series of escalating violations. Not only has Gasper violated the provisions of the AWPA in this case, but he has altered his books and made inaccurate representations to the Court in the process.

27. Gasper has profited from his failure to pay minimum wages to the Plaintiffs.

28. The Court concludes Gasper is liable to Plaintiffs for damages under the AWPA.

### CONCLUSION

The Court finds the Plaintiffs' morning and afternoon wait times to be compensable. The Court further finds Gasper showed neither good faith nor reasonable grounds for failing to compensate Plaintiffs for the wait time. The Court finally finds recomputation of the ultimate award is appropriate in light of the above findings, the Fifth Circuit opinion, and the AWPA.

The calculation of damages under the FLSA as contained in the Court's original decision is hereby modified as follows:

| Plaintiff | Total Days Worked | Number of Hours | Daily Wait Time | Daily Wages Paid | Daily Wages Owing | Total Wages Owed |
|---|---|---|---|---|---|---|
| Maria Vega | 69 | 8 | 3 | $14.00 | $22.85 | $1,576.65 |
| Eva Trevino | 42 | 8 | 3 | $10.00 | $26.85 | $1,127.70 |
| Pedro Trevino | 42 | 8 | 0 | $10.00 | $16.80 | $705.60 |
| Esteban Posada | 22 | 8 | 3 | $14.00 | $22.85 | $502.70 |
| Francisco Licea Carrillo | 104 | 8 | 3 | $15.00 | $21.85 | $2,272.40 |
| Sixta Cadena Garcia | 130 | 8 | 3 | $16.00 | $20.85 | $2,710.50 |
| Jose Pacheco | 23 | 8 | 3 | $20.00 | $16.85 | $387.55 |
| Angel Rangel | 38 | 8 | 3 | $16.00 | $20.85 | $792.30 |
| Sergio Manquera | 1 | 8 | 3 | $26.70 | $10.15 | $10.15 |

The calculation of liquidated damages under the FLSA, 29 U.S.C. § 216(b) as contained in the Court's original decision is hereby modified as follows:

| Plaintiff | Total Wages Owed | Liquidated Damages | Total FLSA Damages |
|---|---|---|---|
| Maria Vega | $1,576.65 | $1,576.65 | $3,153.30 |
| Eva Trevino | $1,127.70 | $1,127.70 | $2,255.40 |
| Pedro Trevino | $705.60 | $705.60 | $1,411.20 |
| Esteban Posada | $502.70 | $502.70 | $1,005.40 |
| Francisco Licea Carrillo | $2,272.40 | $2,272.40 | $4,544.80 |
| Sixta Cadena Garcia | $2,710.50 | $2,710.50 | $5,421.00 |
| Jose Pacheco | $387.55 | $387.55 | $775.10 |
| Angel Rangel | $792.30 | $792.30 | $1,584.60 |
| Sergio Manquera | $10.15 | $10.15 | $20.30 |

Furthermore, these nine Plaintiffs are each awarded an additional amount in statutory damages under the AWPA, 29 U.S.C. § 1854(c) as follows:

| Plaintiff | Total FLSA Damages | AWPA damages | Grand Total Damages Award |
|---|---|---|---|
| Maria Vega | $3,153.30 | $500.00 | $3,653.30 |
| Eva Trevino | $2,225.40 | $500.00 | $2,725.40 |
| Pedro Trevino | $1,411.20 | $0.00 | $1,411.20 |
| Esteban Posada | $1,005.40 | $500.00 | $1,505.40 |
| Francisco Licea Carrillo | $4,544.80 | $500.00 | $5,044.80 |
| Sixta Cadena Garcia | $5,421.00 | $500.00 | $5,921.00 |
| Jose Pacheco | $775.10 | $500.00 | $1,275.10 |
| Angel Rangel | $1,584.60 | $500.00 | $2,084.60 |
| Sergio Manquera | $20.30 | $26.80 | $47.10 |

**JUDGMENT WILL BE ENTERED** in accordance with these Findings of Fact and Conclusions of Law. Costs will be assessed against Defendant Gasper.