George P. SHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

JIM WALTER CORPORATION, a Corporation, Defendant.

Civ. A. No. 2959–N.

United States District Court, M. D. Alabama, N. D.

June 22, 1970.

L. H. Silberman, Solicitor of Labor, Washington, D. C., Beverley R. Worrell, Regional Solicitor, and Roger J. Martinson, Atlanta, Ga, for plaintiff.

Truman Hobbs, Hobbs, Copeland, Franco, Riggs & Screws, Montgomery, Ala., and Harrison C. Thompson, Jr., Shackleford, Farrior, Stallings and Evans, Tampa, Fla., for defendant.

## ORDER

JOHNSON, Chief Judge.

This action was initiated by the Secretary of Labor for the purpose of asking this Court to enjoin the Jim Walter Corporation, a corporation, from violating the provisions of Sections 11(c) and 15(a) (5) of the Fair Labor Standards Act, as amended. The Secretary contends that the defendant corporation is engaged, within the jurisdiction of this Court, in business under the name of Jim Walter Corporation, a corporation, in the sale and construction of shell homes; that from February 18, 1967, to the present the defendant has been and continues to be engaged in the performance of related activities as a unified operation under common control for a common business purpose and thus is an "enterprise" within the meaning of Section 3(r) of the Act. The Secretary contends that since February 18, 1967, the defendant has repeatedly violated Sections 11(c) and 15(a) (5) of the Act in that it has failed to make, keep and preserve adequate and accurate records of its home construction employees and of the wages, hours and other conditions and practices of employment as required by the law.

The defendant admits coverage, but denies that it has violated or is violating any provisions of the Fair Labor Standards Act, and specifically denies that it has failed to make, keep and preserve adequate and accurate records of its home construction employees. The Secretary contends that these individuals who do the actual home construction are employees of defendant. The defendant contends that they are subcontractors or independent contractors and not employees within the meaning of the Act.

The case is now submitted upon the issues as formulated by the pleadings, and as outlined in the pretrial order of this Court made and entered February 20, 1970, the evidence consisting of the testimony of several witnesses and numerous exhibits thereto, and the briefs and arguments of the parties.

Jim Walter Corporation sells "shell" homes nationwide. The evidence in this case reflects that a shell home is a conventional, nonprefabricated home which the builder leaves in a semi-finished state, usually with the interior unfinished. The Montgomery branch of the Jim Walter Corporation has six regular employees. During the past three years approximately 750 shell homes have been built out of the Montgomery branch which encompasses a substantial part of south Alabama, northwest Florida and parts of southwest Georgia. There are currently 24 models of Jim Walter homes. These homes sell from approximately $3,000 to $11,000, exclusive of the land which must be furnished by the purchaser of the shell home. The Jim

Walter Corporation supplies most of the materials necessary for the construction of these shell homes. Some of the materials, such as roofing and wallboards, are purchased in large lots by Jim Walter from suppliers and are warehoused in centralized locations. However, the large majority of the building materials are purchased from local suppliers close to the home site. Jim Walter Corporation in its Montgomery operation regularly employs a construction superintendent. The individuals that the Secretary contends are employees and that the defendant contends are subcontractors are initially interviewed by the Jim Walter building superintendent. In this interview, the building superintendent inquires into the background and expertise of the applicant in some detail. This is for the purpose of determining whether the applicant has the required skill and experience to build the houses. If the building superintendent determines that the applicant is competent, he then gives him an opportunity to sign a contract to build a Jim Walter home. Each time an individual enters into a contract to build a Jim Walter house, he must sign a written contract which specifies the type of house and the price to be paid by Jim Walter for its construction. The 731 contracts for the three-year period are in evidence in this case. During this three-year period 119 different subcontractors built Jim Walter homes. An accurate analysis of homes built for the period February 1, 1967, to January 30, 1970, is set out in the brief of the defendant. This analysis is as follows:

| NUMBER OF HOMES BUILT DURING PERIOD BY SUBCONTRACTOR | NUMBER OF SUBCONTRACTORS DURING PERIOD BUILDING NUMBER OF HOMES IN COL. 1 | TOTAL NUMBER OF HOMES BUILT BY CATEGORY OF SUBCONTRACTOR |
|:---:|:---:|:---:|
| 1 | 48 | 48 |
| 2 | 19 | 38 |
| 3 | 6 | 18 |
| 4 | 8 | 32 |
| 5 | 5 | 25 |
| 6 | 0 | 0 |
| 7 | 6 | 42 |
| 8 | 5 | 40 |
| 9 | 2 | 18 |
| 10 | 1 | 10 |
| 11 | 2 | 22 |
| 12 | 3 | 36 |
| 13 | 1 | 13 |
| 14 | 2 | 28 |
| 15 | 1 | 15 |
| 18 | 3 | 54 |
| 19 | 1 | 19 |
| 22 | 1 | 22 |
| 23 | 1 | 23 |
| 37 | 1 | 37 |
| 47 | 1 | 47 |
| 62 | 1 | 62 |
| 82 | 1 | 82 |
| TOTAL | 119 | 731 |

It appears, therefore, that 48 "subcontractors" built only one home for Jim Walter during the three-year period. Only four of 119 "subcontractors" built as many as 25 homes during that period. The evidence in this case reflects that the amount of time that it took to complete one of these shell homes varies considerably with the individual who was doing the work, but the average building time was approximately five working days. Thus, it affirmatively appears that only four of 119 subcontractors worked as much as ⅛ of their time for the defendant during this three-year period. The evidence in the case further reflects that the individuals that subcontracted to build these shell homes varied widely in ability, experience, initiative and diligence. There was also considerable variance in their financial success. For instance, R. C. Carter cleared approximately $12,000 in 1968 after depreciation on his equipment and after deducting his expenses. Charles Gilliland grossed over $10,000 in seven months. T. E. King had, at the time of the trial, constructed 14 of these shell homes over a period of five months and had, during the same period, done considerably other subcontracting work for other general contractors. King netted after expenses an average of $186 per shell house, which normally took him about four days to build. Earl Hesler averaged a net profit to him after paying his crew of from $150 to $200 per house. The evidence in this case reflects that all subcontractors were paying their employees more than the minimum wage. These subcontractors had from two to six employees. Some subcontractors, such as Ackerman and Mock, did not make as much profit as the others.

The tools and equipment owned by the subcontractors varied in value from several thousand dollars to a few hundred dollars. The continuity of the relationship between the Jim Walter Corporation and these subcontractors ranges from Carter Construction Company (also known as R. C. Carter), which company has built numerous homes for the defendant over an extended period of time, to the 48 subcontractors who had during the three-year period built only one home. In each instance, each subcontractor determines the number of men who work for him, who these men would be, the rate of pay, the days and hours they worked, and which employee performed what job. In fact, the evidence in this case is clear to this Court that each subcontractor was in complete control of his crew and the directing of the work. In some instances, the subcontractors took off numerous days between jobs; in others, the subcontractor worked for other general contractors at the same time they were building Jim Walter homes.

The sole issue presented in this case is whether these "subcontractors" were independent contractors or were employees within the meaning of the Fair Labor Standards Act.

■■ The determination of whether there is an employment relationship under the broad definitions of the Fair Labor Standards Act depends not upon the usual common law test but rather, as the Supreme Court stated in Rutherford Food Corporation v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772, "upon the circumstances of the whole activity" including "the underlying economic realities" and whether "the work done, in its essence, follows the usual path of an employee". Various criteria have been articulated by the courts in making such a determination. The United States Court of Appeals for the Fifth Circuit has, in Wirtz v. Lone Star Steel Co., 405 F.2d 668 (1968), Mitchell v. John R. Crowley & Bro., Inc., 292 F.2d 105 (1961), Stewart-Jordan Dist. Co. v. Tobin, 210 F.2d 427 (1954), and NLRB v. Steinberg, 182 F.2d 850 (1950), discussed in detail the various criteria, the application of which to the facts in a given case will assist in determining

whether persons are subcontractors or independent contractors as opposed to being employees. The application of these criteria to the evidence in this case leads this Court to the firm conclusion that the Jim Walter Corporation occupies the position of a general contractor and the several carpenters and individuals that constructed the shell homes for the corporation occupy the position of subcontractors. Work performed by the subcontractors does not take place on the premises of the Jim Walter Corporation; the corporation does not exercise any control over the employees of the subcontractors nor does it have the power to fire, hire or modify the employment condition of the employees of the subcontractors. The work is not in any way connected to any production line and the employees may and, in many instances, did refuse for various periods to work for Jim Walter and do in fact work for other general contractors. The Secretary's reliance on Rutherford Food Corp. v. McComb, *supra,* is misplaced. In *Rutherford* the employees worked in the slaughterhouse, deboning beef. The men working under the "independent contractor" in the deboning process shared equally in the proceeds. The work was actually performed on the plant premises. The carcasses to be deboned came from the slaughterhouse assembly line. Thus, it appeared that "upon the circumstances of the whole activity" in *Rutherford,* the individuals whose work was being analyzed were clearly not independent contractors. Just the reverse is true here. The overwhelming evidence demonstrates that the subcontractors who constructed the Jim Walter shell homes are independent contractors and not employees of the defendant.

It follows, therefore, that the evidence in this case does not reflect any violations of the provisions of sections 11(c) and 15(a) (5) of the Fair Labor Standards Act on the part of the Jim Walter Corporation. The request of the Secretary that a judgment enjoining and restraining the defendant will be denied.

In accordance with the foregoing, it is the order, judgment and decree of this Court that the injunction sought by the plaintiff in this case be and the same is hereby denied.