James V. DOLAN, et al., Plaintiffs,

v.

PROJECT CONSTRUCTION CORPORATION, Defendant.

Civ. A. No. 82–K–2092.

United States District Court, D. Colorado.

March 15, 1983.

---

**14.** 58 N.Y.2d 42, 457 N.Y.S.2d 771, 444 N.E.2d 21 (Ct.Apps.1982).

**15.** *Id.* 457 N.Y.S.2d at 774, 444 N.E.2d at 24.

Sander N. Karp, Karp, Goldstein & Stern, Denver, Colo., for plaintiffs.

Warren L. Tomlinson, Bruce W. Sattler, Jeffrey T. Johnson, Holland & Hart, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This action was brought by plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and Wyoming Statute § 27–4–104. Plaintiffs contend that while employed as electricians on a construction project operated by the defendant, Project Construction Corporation, they were denied wages and overtime compensation to which they were entitled pursuant to §§ 6, 7, and 16(b) of the Fair Labor Standards Act; 29 U.S.C. §§ 206, 207, and 216(b). They have brought suit individually and on behalf of all others similarly situated. Jurisdiction is based on 29 U.S.C. § 216(b), 28 U.S.C. § 1337, and the court's pendent jurisdiction over claims relating to Wyoming Statute § 27–4–104. Defendant has moved for partial summary judgment pursuant to Rule 56, F.R.Civ.P. For the following reasons partial summary judgment is granted.

Plaintiffs were hired to work on the construction of a natural gas processing plant called the Amoco-Whitney Canyon Project, located approximately 15 miles outside of Evanston, Wyoming. Each day plaintiffs (and all hourly employees) were required to "brass-in" at the main camp, and then board buses provided to take them to the job site. "Brassing-in" entailed picking up brass tags containing their identification numbers, which were used to verify attendance and control access to the job site. Employees were not allowed to board the buses until they had picked up their brass tags, and were required to use the bus service rather than provide their own transportation due to security considerations and safety and traffic problems on the narrow, winding road leading to the project.

Plaintiffs "brassed-in" between 5:40 a.m. and 6:15 a.m. each morning, took the 20–30 minute bus ride to the designated work-site, and then changed clothes if necessary, picked up tools, received assignments, and generally made preparations to begin work at 7:00 a.m. At the end of the day the procedure was reversed. According to defendant, employees were compensated for all hours of productive work at the jobsite but were not compensated for time spent traveling to and from work, including the bus ride from the main camp to the jobsite and back. Plaintiffs claim they are entitled to compensation for time spent on the bus and time spent at the site before the scheduled 7:00 a.m. start up time.

Defendant's motion for summary judgment contends that express language of the Portal-to-Portal Act and later interpretations of the Act bar plaintiffs' claims for travel time to and from the project site. Defendant, however, concedes in its reply brief that there are disputed issues of material fact involving the preparatory work after arrival at the job site, before the 7:00 a.m. start up time, and therefore has limited its motion to one for partial summary judgment dealing only with plaintiffs' claims for time spent on the bus.

The Fair Labor Standards Act of 1938 established minimum wage and overtime pay requirements at 29 U.S.C. §§ 206 and 207. In 1947 congress enacted the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.,* spe-

cifically to address the issue of what constitutes compensable hours worked, after finding that the original act had been interpreted contrary to the intent of congress. The plain language of § 254(a) of the Portal-to-Portal Act states that [except as provided in subsection (b) of this section] no employer shall be held liable for failure to pay minimum wage or overtime for

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

Subsection (b) provides that the employer shall not be relieved of liability if the activity is compensable by either

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective bargaining representative and his employer; or

(2) a custom on practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

1. Although plaintiffs appear to rely on the custom or practice of other contractors and other construction firms to support their argument, this is clearly contrary to the statute on its face, congressional intent, and the Department of Labor interpretive bulletin. Senate Committee Report, p. 45; 29 C.F.R. § 790.10(d).

2. While it is arguable that administrative interpretations do not carry the force of law, they are entitled to substantial weight by reviewing courts. *Skidmore v. Swift and Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Brennan*

 Because defendant has modified its motion for summary judgment to include only the travel time to and from the actual place of performance, I am concerned with the applicability of 254(a)(1) rather than 254(a)(2) at this time. Moreover, plaintiffs admit that there was no express contract term to compensate employees for travel time, and that they knew the procedures for early check-in and the bus ride to the site were required as a condition of employment. (Dolan affidavit, paragraph 14). This clearly obviates the need to consider 254(b) exceptions for either contractual provision or custom or practice in effect where the workers were employed.[1]

 While the plain language of 254(a) is fairly straightforward, there are also administrative interpretations which help to pinpoint its meaning.[2] Within six months after the enactment of the Portal-to-Portal Act, the Wage and Hour Administrator of the Department of Labor issued an interpretive bulletin listing specific examples of non-compensatory travel time. These included riding from the plant gate to the actual place of performance, riding on buses between a town and an outlying mine or factory, and riding on buses from a logging camp to the site where operations are being conducted. 29 C.F.R. § 790.7(f). A close parallel to the circumstances of the instant case can be drawn from each of the above examples. The interpretive bulletin also refers to the Senate Committee Report which concluded that a ride was non-compensable irrespective of whether it was on or off company premises, or before or after check-in. 29 C.F.R. § 790.7(e).

In order to avoid the plain language of the statute and the interpretive bulletin,

*v. South Davis Community Hospital,* 538 F.2d 859 (10th Cir.1976). Further, "administrative interpretations are to be given especially authoritative weight when [as here] (1) the interpretative rule embodies a construction made contemporaneously with the enactment of the statute . . . or (2) when the interpretative regulation or policy is of long standing." *Oil Shale Corp v. Morton,* 370 F.Supp. 108, 122 (D.Colo. 1973), (Finesilver, J.), citing Davis, Administrative Law, Vol. I, § 5.06 at p. 324, (1958).

plaintiffs have also argued in their brief that because of information and pay checks passed out to employees during the bus ride, the travel time should be included as part of the principal activity for which they are rightfully compensated. See 29 C.F.R. § 785.38. I reject this argument for several reasons. First, 29 C.F.R. 790.7(g) specifically lists waiting [in line] to receive a paycheck as a type of activity normally performed outside the workday and considered a preliminary or postliminary activity. Further, plaintiff Dolan's affidavit clearly states at paragraph six that instructions for the day were received from the foreman at the project site during the interval between the arrival time and the 7:00 a.m. start up. No mention is made of any "work" performed during the approximately 20 minute bus ride to the work area. Dolan later states at paragraph 11 of his affidavit that the company used the bus to "disseminate directions and information," but goes on to explain that this was only in the evening, only on selected days, and consisted of mimeographed sheets used to inform employees of changes in policies and procedures and advise them of progress made in the overall job. Defendant agrees that it occasionally left mimeographed communications on the bus seats at night, but considered this use of the buses as simply a mailbox for its employees. I hold that this intermittent receipt of directions and information is not an integral part of plaintiffs' principal activities and cannot be considered work of consequence. Further, nowhere in the allegations of the complaint, the brief opposing summary judgment, or the affidavit in support of the brief does it state that plaintiffs actually read or even felt obligated to read these mimeographed sheets while on the bus.

I find the plain language of the statute, the legislative history, and the thorough and exhaustive discussion in the interpretive bulletin issued by the Wage and Hour Administrator for the Department of Labor persuasive. I therefore conclude that plaintiffs' travel time to and from the project site is not compensable. I do not reach any conclusion on plaintiffs' claims for time spent at the worksite after arrival due to the admitted dispute of material issues of fact.

IT IS ORDERED that defendant's motion for partial summary judgment is granted.

### ORDER AFFIRMING MAGISTRATE'S ORDER

Magistrate Schauer's rulings concern whether and how additional plaintiffs may "opt-in" to this FLSA suit under 29 U.S.C. 216(b). § 216(b) states that parties may "opt-in" to a suit already filed by signing a consent form, as distinguished from a true class action suit in which parties must be notified of an opportunity to "opt-out." When plaintiffs sent interrogatories asking for names and addresses of defendant's other employees (who of course would be potential plaintiffs) defendant filed a motion for protective order which was granted. At the same hearing, plaintiffs' motion for leave to give notice to class members was denied, and plaintiffs' motion for court approval of attorneys' fees was not addressed because of the other two rulings.

The circuits are split on what procedures are allowed or prohibited in the process of obtaining consent forms. Both sides have cited district and appellate court cases in support of their positions. The conflict has not been resolved by the supreme court.

The issues are whether plaintiffs are entitled to names and addresses of putative plaintiffs through discovery, and whether they may send out a notice advising them of the opportunity to "opt-in." The problem is that § 216(b) allows an action to be maintained by any employee for himself and others similarly situated, but omits any instructions or guidance on how this is to be accomplished, other than to require the party's consent. (A related issue which the magistrate did not consider because of his initial rulings is what role the court should play in approving or sending out the notice if permission were granted.)

Defendant relies on *Kinney Shoe Corporation v. Vorhes,* 564 F.2d 859 (9th Cir.1977)

which reversed a district court ruling permitting circulation of a notice and consent to join form. The court held that due process considerations mandating notice in class actions are not present in this situation since parties are allowed to "opt-in" but are not foreclosed from proceeding independently if they prefer. The court also raised the policy concern of avoiding either plaintiff or the court stirring up litigation and soliciting claims. A later ninth circuit decision goes even further, stating "Nevertheless, most courts that have interpreted the FLSA, including this court, have held that neither the named plaintiffs, their counsel, nor the court have the power to provide notice to FLSA class members. (citations omitted) .... The district court quite properly found that the resulting 'consents' were ineffective." *Partlow v. Jewish Orphans' Home of Southern California,* 645 F.2d 757, 759 (9th Cir.1981).

Plaintiffs contend that the weight of authority is that a plaintiff is entitled to be provided with the names and addresses and should be allowed to give them notice of the opportunity to "opt-in." Further, plaintiffs argue that subsequent appellate and district court decisions have eroded the reasoning in *Kinney* or specifically refused to follow it. After reading several of the cited cases, I agree with plaintiffs that the current view is to allow the discovery and some form of notice, although I don't think the magistrate's ruling was clearly erroneous or contrary to law as the plaintiffs claim. A more recent case which rejects the *Kinney* holding with a thorough discussion of its rationale is *Woods v. New York Life Insurance Company,* 686 F.2d 578 (7th Cir.1982). See also *Braunstein v. Eastern Photographic Laboratories,* 600 F.2d 335 (2nd Cir.1979). ("Although we agree with Judge Choy's view in *Kinney* that due process does not require notice, we do not agree with his conclusion that there is no power in the district court to order it in a proper case.")

In instances where discovery is allowed, the preferred order is conditioned upon the plaintiffs bearing the cost for compiling the list. Further, such notice as might be sent by plaintiffs should not carry any indication of sponsorship by the court. As stated in *Woods v. New York Life, supra,* at 582, "the power to authorize the sending of notice does not contain, as a matter of logic or good sense, the further power to issue a judicial invitation to join a lawsuit."

The magistrate in this action was confronted with a conflict in persuasive authority and no binding precedent. I am not prepared to rule that because he adopted one position in the conflict rather than the other that his ruling is clearly erroneous or contrary to law. Error, if any, would be obscure rather than clear and where the law is unsettled, the ruling is not contrary. Deference to the office of the magistrate under these circumstances and the provisions of Local Rule 17(c)(3) require that I affirm the decision of the magistrate.

IT IS SO ORDERED.