ORDER
 

 STORY, District Judge.
 

 Plaintiffs bring this class action seeking injunctive relief and damages for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. 201 et seq., (“the FLSA”), and damages for violations of Georgia law governing the payment of wages and the operation of labor pools. Presently before the Court are the following Motions for Summary Judgment: Plaintiff Preston’s Motion for Partial Summary Judgment [88-1] against Richard Farris; Plaintiff Preston’s Motion for Partial Summary Judgment [89-1] against Settle Down Enterprises, Inc., (“Settle Down”); Defendant Richard Farris’s Motion for Partial Summary Judgment [90-1]; and Defendant Settle Down’s Motion for Partial Summary Judgment [91-1]. Discovery disputes also demand attention: Plaintiff Robinson’s Motion for Sanctions [81-1] and Motion to Compel [82-1]; Settle Down’s Motion for Protective Order [80-1]; Farris’s Motion for Sanction [78-1] and Motion to Compel [78-2]; and Movant Employment Consultant’s Motion for Protective Order [79-1], After reviewing the record and considering the arguments of the parties, the Court enters the following Order.
 

 I. Background
 

 Settle Down is a Georgia domestic corporation doing business under the name of Tempcor. Tempcor is a labor pool which provides workers to clients on a day-to-day basis. Many of these workers perform construction work, while some work in hotels, and others stuff inserts into the Atlanta Journal-Constitution (“AJC”). Tempcor operates around the clock, closing only on Sunday nights.
 

 Workers came to Tempcor’s offices hoping to secure work for the day. Laborers who arrived at Tempcor knew employment might not be available. After determining a worker is needed at a particular job, Tempcor generated a work ticket for that worker. The work ticket states, “The Service [Tempcor] is the employer of personnel furnished to Customer ...” (Def. Farris’s Exh. 17.) Also the work ticket instructs the worker that “When your assignment is completed you must report back for reassignment.”
 
 (Id.)
 

 Workers needed special equipment to perform some of the jobs. If a job called for equipment the worker did not have, the dispatcher gave the worker a copy of the ticket to take to the equipment room to pick up a hard hat, boots, or gloves. (Far-ris Dep. of March 25, 1998 at 71.) In
 
 *1273
 
 order to receive equipment, the worker turned over this copy of the work ticket on which “Chinese writing” obscured the name of the customer and the location where the work was to be performed.
 
 (Id.
 
 at 71-72.) This ticket was the only ticket handled by the worker prior to reaching the job site. Plaintiffs allege Tempcor charged workers for gloves which were required to do the job, while Settle Down maintains it simply made gloves available for purchase by workers who wanted gloves on jobs that did not require them. It is unclear whether workers kept the gloves.
 

 Tempcor provided free transportation to the work sites. Workers generally either rode in one of Tempcor’s ten to twelve vans or took MARTA using tokens provided by Tempcor.
 
 (Id.
 
 at 77.) Settle Down contends workers were free to choose their preferred method of transportation, but Plaintiffs contend they were required to wait until receiving the dispatcher’s instructions as to which van to board or where to take MARTA. Otherwise they had no way of knowing where the work was to be performed. (Preston Dep. of March 24,1999 at 92-93.)
 

 A’ter arriving at the job site, the worker picked up his ticket from the van driver and gave it to a representative of the client. At the end of the day, the on-site supervisor signed the work ticket. Then the workers generally brought the ticket back to Tempcor’s office where they returned equipment and Tempcor prepared a voucher.
 
 (Id.
 
 at 85.)
 

 For the most part, Tempcor paid its workers by the hour. Plaintiffs allege they were not properly compensated for the work they performed. Specifically, they allege Tempcor did not pay them for overtime in a timely manner and did not properly compensate them for (1) the time spent waiting for the vans to arrive, (2) traveling to the job site, and (3) coming back to Tempcor’s office to return equipment and have a voucher prepared.
 

 Other workers stuffed inserts into the AJC, and Settle Down paid these workers by the piece. Plaintiffs allege this practice violated minimum wage laws. Regardless of the type of work performed, Settle Down paid its workers by non-negotiable vouchers that could only be exchanged for cash at a few locations in the area. (Far-ris Dep. of March 16,1999 at 66.)
 

 Settle Down employed defendant Richard Farris as a consultant. Farris had experience with this type of business and controlled the day-to-day operations of Tempcor. (Farris Dep. of March 16, 1999 at 43; Farris Dep. of March 25, 1998 at 30.)
 

 In its Order of December 2, 1998, this Court granted summary judgment to Plaintiffs regarding (1) Settle Down’s paying workers with non-negotiable vouchers in violation of state and federal law; (2) its failure to pay minimum wage and overtime for piece work performed for the AJC; and (3) its failure to pay overtime within the pay period it was earned.
 

 II. Motions for Partial Summary Judgment
 

 The Court first considers cross-motions for partial summary judgment and then turns to the discovery disputes.
 

 A.
 
 Is Settle Down Subject to the FLSA?
 

 Plaintiffs seek an express ruling that the FLSA applies to Settle Down. In beginning its inquiry the Court recognizes that “within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction.”
 
 Mitchell v. Lublin, McGaughy & Assocs.,
 
 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959). The first question is whether Settle Down was the Plaintiffs’ “employer.” The FLSA defines an employee as “any individual employed by an employer,” 29 U.S.C. § 203(e), and “employ” means “to suffer or permit to work.” 29 U.S.C. § 203(g). Indeed, this
 
 *1274
 
 definition of “employee” has been described as “the broadest definition that has ever been included in any one act.”
 
 United States v. Rosenwasser,
 
 328 U.S. 360, 363 n. 3, 65 S.Ct. 295, 297 n. 3, 89 L.Ed. 301 (1945).
 

 The Supreme Court has held that courts should apply these terms in light of the “economic reality” of the relationship between the parties.
 
 Goldberg v. Whitaker House Co-op., Inc.,
 
 366 U.S. 28, 33, 81 S.Ct. 933, 936-37, 6 L.Ed.2d 100 (1961). The economic realities test asks whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.
 
 Villarreal v. Woodham,
 
 113 F.3d 202, 205 (11th Cir.1997) (citing
 
 Bonnette v. California Health & Welfare Agency,
 
 704 F.2d 1465, 1470 (9th Cir.1983));
 
 see also Baystate Alternative Staffing, Inc. v. Herman,
 
 163 F.3d 668, 675 (1st Cir.1998) (temporary employment agency was the employer of temporary workers).
 

 Here, the Court finds Settle Down was the Plaintiffs’ employer. Settle Down recruited, transported, paid, and maintained records for workers as it supplied labor to its customers. Settle Down selected workers to send to the job sites, indicating a power to hire and fire. Settle Down told workers when its vans would arrive to take them to the job sites. It set the rate of pay, and chose to pay its employees by voucher. Finally, Settle Down maintained the employment records for its workers. While Settle Down contends it had no control over the workers once they reached the job site, it has been held that “the absence of direct, on-site supervision does not preclude a determination that [a temporary employment service and its principals] are the employers of the temporary workers within the broadest definition of the FLSA.”
 
 Baystate,
 
 163 F.3d at 676. Having concluded Settle Down was the Plaintiffs’ employer, the question now is whether the FLSA applied to its employees.
 

 The principle of liberally construing the FLSA’s coverage also guides the inquiry into one way a worker may avail himself of the FLSA’s protection — through his employer’s status as an enterprise engaged in commerce.
 
 Brennan v. Arnheim & Neely, Inc.,
 
 410 U.S. 512, 516-17, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973). The FLSA applies to all the workers of “an enterprise engaged in commerce or in the production of goods for commerce.” 29 U.S.C. § 206 (1998). Under the FLSA, “ ‘Enterprise’ means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose....” 29 U.S.C. § 203(r)(l). An enterprise engaged in commerce or the production of goods for commerce is an enterprise that
 

 (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
 

 (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 ...
 

 29 U.S.C. § 203(s)(l)(A)(i & ii) (1998).
 

 Having determined Settle Down employed the laborers for FLSA purposes, and with it undisputed that Settle Down meets the statutory dollar figure requirement, Plaintiffs need only to show that some of the workers were engaged in commerce to trigger the FLSA’s protection for all its employees. The FLSA defines commerce as “trade, commerce, transportation, transmission, or communication among the several States or between any State and any place thereof.” 29 U.S.C. § 203(b). Settle Down’s billing is handled out of Houston, Texas, thus satisfying the “commerce” requirement. (Farris Dep. of March 16, 1998 at 48-49). Accordingly,
 
 *1275
 
 the Court finds Settle Down is an employer which is subject to the FLSA.
 

 B.
 
 Is Fanis a Joint Employer Under the FLSA?
 

 Having determined Settle Down is subject to the FLSA, the next issue is whether Farris is a joint employer and, therefore, subject to the FLSA.
 
 [1]
 
 Under the FLSA, an employee may have more than one employer as an employer is “any person acting directly or indirectly in the interest of an employer in relation to an employee.29 U.S.C. 203(d). This definition has been held to be sufficiently broad to capture an individual who dominates the administration of a corporation, or acts on behalf of a corporation regarding its employees even though that individual lacks a possessory interest in the corporation.
 
 Reich v. Circle C. Investments, Inc.,
 
 998 F.2d 324, 328 (5th. Cir.1993).
 

 This Court applied the economic realities test in ruling Settle Down is the Plaintiffs’ employer, is an enterprise engaged in commerce, and therefore, is subject to the FLSA. As Farris was the individual involved with Settle Down who knew the most about labor pools and was responsible for day-to-day operations of the business, he, too, is an employer for FLSA purposes. His action on behalf of the corporation makes him an employer.
 

 Farris directs the Court to FLSA’s definition of “enterprise”:
 

 the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor....
 

 29 U.S.C. § 203(r)(l). Farris contends he is an independent contractor, and not part of the “enterprise” which entitles Settle Down’s workers to the FLSA’s protections. This argument fails for two reasons.
 

 First, he cites cases where workers were independent contractors and therefore fell outside the FLSA’s protection.
 
 See Shultz v. Jim Walter Corp.,
 
 314 F.Supp. 454, 458 (M.D.Ala.1970) (persons working on shell homes were independent contractors, not employees);
 
 Goldberg v. Warren Bros. Roads Co.,
 
 207 F.Supp. 99, 104 (D.Me. 1962) (truckers were independent contractors, not employees). These cases deal with whether an entity is a worker’s employer under the act. They do not support a conclusion that a consultant who maintains operational control over a business, yet deems himself an independent contractor cannot be subject to liability.
 

 Second, Farris’s attempt to distance himself from the entity he controlled by arguing he is not “an enterprise” is unavailing. Congress crafted the enterprise liability section of the FLSA to allow businesses to be grouped together so FLSA’s coverage could keep up with changes in the national marketplace.
 
 See Reich v. Gateway Press, Inc.,
 
 13 F.3d 685, 694 (3rd Cir.1994). The enterprise concept allows the revenues of businesses entities to be combined to meet the minimum gross sales amount required by the FLSA.
 
 Patel v. Wargo,
 
 803 F.2d 632, 635 (11th Cir.1986) (“The legislative history [of the FLSA] clearly states the congressional purpose to expand the coverage of the ACT, i.e., to lump related activities together so that the annual dollar volume test for coverage would be satisfied.”). Therefore, the inquiry into the existence of an enterprise is not the same as the analysis of
 
 *1276
 
 liability under the FLSA, as the “finding of an enterprise is relevant only to the issue of coverage.”
 
 Id.
 
 at 637. Here, coverage is established through Settle Down’s activities as an enterprise engaged in commerce. The control Farris exercised over those activities is what makes him the Plaintiffs’ joint employer, and therefore subject to the FLSA.
 

 C.
 
 Are Plaintiffs Entitled to Summary Judgment Against Farris on the Issues which the Court Granted Summary Judgment Against Settle Down?
 

 This Court’s Order of December 2, 1998 granted summary judgment against Settle Down as to liability on four issues; (1) payment of wages with non-negotiable instruments, (2) failure to pay minimum wage for AJC piece work, (3) failure to pay overtime in the work week in which it was earned, and (4) failure to pay overtime on AJC piece work. Plaintiffs contend they are entitled to summary judgment against Farris on these issues.
 

 Based on his. control of the day-today operations of Settle Down, Farris is hable for the failure to pay the minimum wage for the AJC piece work, failure to pay overtime for AJC piece work, and failure to pay overtime within the pay period in which it was earned. As to the payment by voucher, Farris admits Plaintiffs received their pay via a non-negotiable voucher, but contends Plaintiffs suffered no damage thereby. By virtue of his status as a joint employer with Settle Down, Farris is liable for this violation to the extent it is based on federal law. Damages must be determined by the trier of fact.
 

 Accordingly, the Court GRANTS partial summary judgment to Plaintiffs on these issues to the extent liability rests on violations of federal law.
 

 D.
 
 May Plaintiffs Recover From Far-ris for Violations of Georgia Law?
 

 Farris moves for summary judgment contending he cannot be held personally liable for the alleged violations of state law. Plaintiffs assert state law claims against Farris pursuant to O.C.G.A. § 34-10-5 for the violation of § 34-10-2 which prohibits charging temporary workers a fee for using equipment, and pursuant to O.C.G.A. §§ 34-7-2 and 34-7-3 for improper payment of wages.
 

 Farris contends he cannot be held personally liable for violations of § 34-10-2 which prohibits charging a temporary employee a fee for equipment because he is not a labor pool. While no Georgia cases define the contours of the right of action set out in § 34-10-5, the plain language of that statute provides all the guidance this Court needs. The statute provides as follows:
 

 Any person damaged by a violation of Code Section 34-10-2 shall have the right to bring a civil action in a court of competent jurisdiction
 
 against the person or persons responsible for such violation. ...
 

 O.C.G.A. § 34-10-5 (1998) (emphasis added). Thus, liability for violations of § 34-10-2 is not limited only to “labor pools” as contended by Farris. If the jury finds Farris was a “person responsible” for a violation § 34 — 10-2 the Plaintiffs may recover from him.
 

 As for the other alleged violations of Georgia law, § 34-7-2 calls for payment of wages to be made in lawful money, check or credit transfer, and § 34-7-3 provides an instrument issued in payment of wages must be negotiable and “payable in cash, on demand, without discount....”
 
 [2]
 
 With it
 
 *1277
 
 undisputed Settle Down paid its workers using non-negotiable vouchers, the question is whether these statutory provisions imposed a duty on Farris.
 

 Section 34-7-2 commands “[e]very person, firm or corporation ... employing skilled and unskilled wageworkers” to pay wages by “lawful money, check, or credit transfer.” § 34-7-2. Section 34-7-3 provides that instruments used to pay wages must be negotiable instruments, without specifying to whom the statute applies. Nothing in the second statute suggests its coverage is different than the first, so the Court assesses the question of whether these statutes impose a duty on Farris by determining whether Farris is an “employer” under Georgia law.
 

 Under Georgia law, “[t]he test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.”
 
 Golosh v. Cherokee Cab Co.,
 
 226 Ga. 636, 637, 176 S.E.2d 925, 926 (1970). Here, Plaintiffs’ contract was with Settle Down, not Farris.
 
 (See
 
 Work Tickets, Def. Farris’s Exh. 17.) As Plaintiffs had no contractual relationship with Farris, he was not subject to the statutes governing the payment of wages.
 

 Plaintiffs urge the Court to pierce the corporate veil and hold Farris liable for the state law violations. The possibility of piercing the corporate veil does not change the fact that Farris was not the Plaintiffs’ employer, and therefore, not subject to §§ 34-7-2 and 34-7-3.
 

 For the reasons stated above, the Court GRANTS summary judgment to Farris on Plaintiffs’ claims alleging a violation Code Sections 34-7-2 and 34-7-3 prohibiting payment of wages with non-negotiable instruments, and DENIES summary judgment on the claims brought pursuant to section 34-10-5.
 

 E.
 
 Do Plaintiffs’ Claims Against Far-ris in the Amended Complaint Relate Back?
 

 Both Plaintiffs and Farris move for summary judgment on the issue of whether claims raised by Plaintiffs in the Amended Complaint relate back. Whether an amended complaint relates back is governed by Rule 15(c) of the Federal Rules of Civil Procedure which states, in relevant part:
 

 Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 

 Fed.R.Civ.P. 15(c)(3). Rule 15(c) is designed to resolve “the problem of a misnamed defendant” and allow a party “to correct a formal defect such as a misnomer or misidentification.” Fed.R.Civ.P. 15(c)(3), Advisory Committee Notes to 1991 Amendment. Plaintiffs contend relation back is appropriate here because they “were not aware of the exclusive nature of Defendant Richard Farris’ control of the day to day operations” of Settle Down. (Pl.s’ Resp. To Def. Farris’s Mot. for
 
 *1278
 
 Summ.J. at 11.) The question now is whether Plaintiffs’ lack of knowledge of Farris’s control of the operation is the kind of “mistake concerning the identity of the proper party” encompassed by the Rule.
 

 The Eleventh Circuit has recently stated it “does not read the word ‘mistake’ to mean ‘lack of knowledge.’ For these purposes, ignorance does not equate to misnomer or misidentification.”
 
 Wayne v. Jarvis,
 
 197 F.3d 1098, 1103 (11th Cir. 1999);
 
 see also Powers v. Graff,
 
 148 F.3d 1223, 1226-27 (11th Cir.1998) (“[The Rule] permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where ... there is a lack of knowledge of the proper party.”)
 

 Here, Plaintiffs lacked knowledge that Farris would be a proper party to their lawsuit. The Rule does not allow relation back for this kind of mistake. Accordingly, for statute of limitations purposes, Plaintiffs commenced this action against Farris on January 12,1999.
 

 F.
 
 Which Statute of Limitations Applies to Violations of Federal Law ?
 

 Plaintiffs, Farris, and Settle Down each have moved for summary judgment on the issue of which statute of limitations governs the conduct at issue here. A civil action to enforce the FLSA must be commenced within two years of the violation, however, the statute of limitations is extended to three years for “a cause of action arising out of a willful violation.” 29 U.S.C. § 255(a). A violation is willful when an employer “knew or showed reckless disregard for the matter of whether its conduct was prohibited” by the FLSA.
 
 McLaughlin v. Richland Shoe Co.,
 
 486 U.S. 128, 133, 108 S.Ct. 1677, 1682, 100 L.Ed.2d 115 (1988). An employer’s failure to make a determination that a practice violates the FLSA supports a conclusion of recklessness.
 
 See LaPorte v. General Elect. Plastics,
 
 838 F.Supp. 549, 558 (M.D.Ala.1993).
 

 A genuine issue of material fact remains as to whether Settle Down and Farris failed to make a determination that their actions violated the FLSA and thereby committed a willful violation. Farris contends he made efforts to investigate and comply with the FLSA’s requirements, checking with other consultants and attorneys. (Farris Dep. of March 16, 1999 at 67-68, 69.) Plaintiffs counter by indicating Farris admitted Settle Down’s violations. (Farris Dep. of March 16, 1999 at 67, 86
 
 &
 
 124.) On these facts, a jury must decide if Settle Down’s and Farris’s violations of the FLSA were willful violations. Accordingly, all motions for summary judgment are DENIED as they relate to the application of the three-year statute of limitation for willful violations.
 

 G.
 
 Are the Plaintiffs Entitled to Pay for Waiting Time & Travel Time?
 

 Plaintiffs seek compensation (1) for the time beginning when they received their work assignment until the time they departed for the job site, (2) for travel to the job site, and (3) for the time from when they received a signed work ticket at the end of the day until they returned the ticket to the Defendants. Both Settle Down and Farris have moved for summary judgment on the issue of whether Plaintiffs must be compensated for this waiting time and travel time.
 

 1. Pre-Travel Waiting Time
 

 Time spent waiting for an employer’s call to duty may be compensable under the FLSA.
 
 See Skidmore v. Swift & Co.,
 
 323 U.S. 134, 136, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). The distinction between compensable and non-compensable time is drawn this way: a worker who is “engaged to be waiting” is entitled to compensation while a worker who is “waiting to be engaged” is not.
 
 LaPorte,
 
 838 F.Supp. at 554 (citing
 
 Skidmore,
 
 323 U.S. at 140, 65 S.Ct. at 164.) The inquiry is whether “the
 
 *1279
 
 time is spent predominately for the employer’s benefit or for the employee’s.”
 
 Birdwell v. City of Gadsden, Ala.,
 
 970 F.2d 802, 807 (11th Cir.1992) (citing
 
 Armour & Co. v. Wantock,
 
 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944)). An employee is on duty, is engaged to wait, where “waiting is an integral part of the job.” 29 C.F.R. § 785.15. An employee is off duty, is waiting to be engaged, where he is “completely relieved from duty” and where the time period is “long enough to enable him to use the time effectively for his own purposes.” 29 C.F.R. § 785.16(a). However, an employee “cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.”
 
 Id.
 
 Whether an employee is waiting to be engaged or engaged to be waiting depends on all the circumstances of the case.
 
 Armour,
 
 323 U.S. at 133, 65 S.Ct. at 168.
 

 Defendants contend Plaintiffs are not entitled to compensation for the time they were on the premises prior to being notified that work was available. On this much the parties can agree, as Plaintiffs do not seek compensation for the time before Tempcor generated their work tickets.
 

 Plaintiffs claim they are entitled to wages for the period of time between the generation of their work tickets and the arrival of the transportation which took them to the work site (“pre-travel waiting time”). Defendants contend Plaintiffs are not entitled to compensation for this time for two reasons. First, Settle Down maintains Plaintiffs could not be engaged to wait because no hiring took place until the Plaintiffs’ arrival at the job site, as its clients had the right to refuse to hire the workers. Settle Down provides no cite to the record to support this assertion and nothing in its Statement of Undisputed Material Facts supports this conclusion either. This argument is without merit in light of the wTork ticket which provided that Tempcor is the worker’s employer and which committed the client to a minimum four hour charge per employee. (Def. Farris’s Exh. 17.)
 

 Second, Farris argues nothing required the employees to wait at the premises after checking in, contending the Plaintiffs could proceed to the work sites on their own. According to this view, Tempcor offered van rides to the site as a courtesy. However, evidence in the record indicates Plaintiffs had to be available on the premises so they could hear their names called for the van. (Ronnie Preston Dep. of March 24,1999 at 92.)
 

 The essence of Plaintiffs’ claims for pre-travel waiting time is that Plaintiffs had no choice but to wait for the vans to take them to the job site, and therefore, they could not use this time effectively for their own purposes. Factual issues remain regarding Tempcor’s transportation policy. Evidence in the record suggests Tempcor required Plaintiffs to remain on the premises until being notified of which van would be taking them to an unknown destination. If true, this would support a conclusion that the workers did not have the ability to use time for their own purposes, and therefore, be entitled to compensation. A jury must decide these factual issues.
 

 2. Travel Time
 

 The Portal-To-Portal Pay Act addresses the issue of whether travel time is compensable under the FLSA. The Act provides an employer is not required to pay the minimum wage to an employee for “(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities.” 29 U.S.C. § 254(a). Travel time is compensable, then, only if it is a principal activity of the employee. The question here is whether the Plaintiffs’ travel time between Tempcor’s offices and
 
 *1280
 
 the site where they worked is a compensa-ble principal activity or a noncompensable preliminary or postliminary activity.
 

 A principal activity refers to work which is “necessary to the business and is performed by the employees, primarily for the benefit of the employer.”
 
 Vega v. Gasper,
 
 36 F.3d 417, 424 (5th Cir.1994). On one end of the spectrum, ordinary home-to work travel is not compensable; at the other stands the proposition that “[t]ravel that is an indispensable part of performing one’s job is a principal activity and is compensable.”
 
 Id.
 

 The principle that ordinary home-to-work travel is not compensable has been applied to situations where travel to the work site is not coupled with any other activity.
 
 Ralph v. Tidewater Constr. Corp.,
 
 361 F.2d 806, 808 (4th Cir.1966) (boat ride of fifteen minutes to an hour noncompensable). Even where employees receive information while in transit, the activity has been held preliminary.
 
 Dolan v. Project Constr. Corp.,
 
 558 F.Supp. 1308, 1311 (D.Colo.1983) (thirty minute ride on employer’s buses during which employees received printed information was not com-pensable). Conversely, travel has been held part of the employee’s principal activity and therefore compensable when it is coupled with transporting equipment without which the employee’s job could not be done.
 
 Crenshaw v. Quarles Drilling Corp.,
 
 798 F.2d 1345, 1349 (10th Cir.1986) (workers carried special equipment for servicing oil rigs);
 
 D A & S Oil Well Servicing, Inc. v. Mitchell,
 
 262 F.2d 552 (10th. Cir.1958) (driving trucks hauling special equipment is compensable).
 

 Tension exists between regulations which may apply to this case. “Riding on buses between a town and an outlying mine or factory where the employee is employed” is offered as an example of noncompensable preliminary activity. 29 C.F.R. § 790.7(f)(2). However, a more specific regulation provides:
 

 Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day’s work, and must be counted as hours worked regardless of contract, custom, or practice.
 

 29 C.F.R. § 785.38. Applying this regulation in conjunction with principles from case law requires a careful look at the facts of the case.
 

 For example, in
 
 Vega v. Gasper,
 
 36 F.3d 417 (5th Cir.1994), the defendant transported farm workers by bus from El Paso to fields outside of town. In reversing the trial court’s award of damages for travel time, the court listed facts supporting its conclusion. The workers performed no work prior to boarding or while riding the buses.
 
 Id.
 
 at 424. The buses carried no tools. The defendant did not require the employees to use the buses, as some workers did not ride on the buses at all.
 

 Conversely, travel time was compensa-ble in
 
 Dole v. Enduro Plumbing,
 
 No. 88-7041-RMT, 1990 WL 252270 (C.D.Cal., Oct.16, 1990). In that case, each day the workers reported to a shop where they checked in, met their fellow workers, picked up the company trucks, and loaded tools on the trucks when needed.
 
 Id.
 
 at *2. The court held the time was compensa-ble based on the requirement of reporting to a meeting place, the performance of other work, and the performance of work while traveling.
 
 Id.
 
 at *5-*6.
 

 In the present case, Plaintiffs performed no work at Tempcor’s offices and loaded no tools on the vans. So if their travel time is to be compensable, it must be by virtue of the workers being “required to report to a meeting place to receive instructions.” 29 C.F.R. § 785.38. Turning to the facts, it is clear the Plaintiffs’ arrival at Tempcor seeking a referral falls outside the scope of this regulation. Farris correctly points out that generally the employees were not required to report to Tempcor’s office; instead they came to Tempcor’s office in hopes of securing work
 
 *1281
 
 on a day to day basis.
 
 [3]
 
 Arriving at a business on one’s own initiative seeking employment does not trigger the protection of the FLSA.
 

 Once the workers received a work ticket, they became Tempeor’s employee, as provided on the work ticket.
 
 (See
 
 Work Ticket, Def. Farris’s Exh. 17.) If after this point, Tempcor required the Plaintiffs to report to a meeting place to receive instructions, this event would trigger the start of the workday and time spent in travel after that time would be compensable.
 
 See
 
 29 C.F.R. § 785.38;
 
 Enduro Plumbing,
 
 1990 WL 252270 at *5;
 
 see also Breen v. Concrete by Wagner, Inc.,
 
 No. 98 C 3611, 1999 WL 1016267 (N.D.Ill, Nov.4, 1999) (requiring workers to report and receive instructions triggers start of work day).
 

 As noted above, factual issues remain surrounding the transportation of Temp-eor’s employees. It is unclear whether the workers were free to proceed to the job site on their own or if they were required to report to the dispatcher to learn of their destination. Whether travel time is com-pensable depends on whether Tempcor required to report a designated meeting place to receive instructions after generating the work ticket. A jury must decide this issue.
 

 3. Return Travel & Post-Travel Waiting Time
 

 Factual issues also preclude summary judgment as to whether the Plaintiffs are entitled to compensation for travel back to Tempeor’s offices, returning safety equipment, and waiting for Tempcor to prepare their voucher. This time is compensable if it (1) primarily benefitted the employer and (2) the employee could not effectively use the time for his own purposes.
 
 Vega v. Gasper,
 
 886 F.Supp. 1335, 1837, (W.D.Tex.1995) (on remand, employees entitled to be compensated for time waiting in fields while employer calculated their pay using a token per basket system).
 

 Defendants contend Plaintiffs could return to Tempcor at any time to turn in their work ticket and receive a voucher. (Farris Dep. of March 25, 1998 at 85.) Plaintiffs, on the other hand, contend the Plaintiffs had to return the equipment,
 
 (id.),
 
 and could not hold the tickets overnight if they had hopes of working the next day on a repeat ticket. (Israel Douglas Dep. at 21; Billy Johnson Dep. at 85.)
 

 Genuine issues of fact remain as to whether Defendants required the Plaintiffs to return to Tempeor’s office. If the Plaintiffs were required to return to the office at the end of the day such that the Plaintiffs (1) could not effectively use the time for their own purposes, and (2) this time primarily benefitted the employer, the workers must be compensated for this time. In light of the factual issues which remain regarding Plaintiffs’ waiting time and travel time, Defendants’ Motions for Summary Judgment must be DENIED on these claims.
 

 H.
 
 Does Georgia’s Two Year Stalute of Limitation Apply to State Law Claims?
 

 Settle Down seeks a ruling that the Georgia statute of limitations bars all state law claims which accrued more than two years prior to the filing of this action.
 
 See
 
 O.C.G.A. § 9-3-22 (“providing two year statute of limitation for all actions for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime.”) The Court agrees, but recognizes this ruling does not prevent Plaintiffs from recovering for violations of federal law over a three year period if it is determined those violations were willful and wanton.
 

 
 *1282
 
 II. Discovery Disputes
 

 A variety of discovery issues also deserve attention at this time.
 

 A.
 
 The Sakas Files
 

 Plaintiffs served a subpoena on attorney Jeffrey L. Sakas seeking documents in his possession. Those documents belonged to his one-time law partner Harold A. Horne who is deceased. Sakas serves as the receiver of Mr. Horne’s law practice pursuant to the Order of the Supreme Court of Georgia. Horne was counsel for Settle Down and Employment Consultant and Advisors, Inc (“ECA”). Plaintiffs’ subpoena sought the production of documents relating to these clients and other enterprises. Plaintiffs Motion to Compel [82-1] seeks the production of documents in these files which are not protected by the attorney-client privilege.
 

 Defendant Settle Down and movant ECA filed Motions for Protective Order [79-1] & [80-1] regarding these documents. As the objections purported to cover all the material in the files, they did not comply with Rule 45(d)(2) which provides:
 

 When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.
 

 Fed.R.Civ.P. 45(d)(2). The objections here do not enable Plaintiffs an opportunity to respond to the claims of privilege in a meaningful way. At this time Plaintiff Robinson’s Motion to Compel [82-1] is DENIED with right to refile. Defendant Settle Down’s Motion for Protective Order [80-1] is DENIED, and Movant ECA’s Motion for Protective Order [79-1] is DENIED.
 

 Accordingly, Sakas is hereby ORDERED to make the materials available for inspection and copying within 10 DAYS from the entry of this Order. Settle Down and ECA should each be provided access to its own files. If Settle Down or ECA wishes to raise any objections to the subpoena they then have 30 days from the entry of this Order in which to file a privilege log with the Court and serve Plaintiffs with that log.
 

 B.
 
 Motion for Sanctions Against Hol-loman By Farris
 

 During his deposition, Plaintiff Anthony Holloman became angry, intimidated Farris’s counsel, and left. Farris seeks sanctions and wishes to depose Holloman in the presence of a marshal. Farris cites no authority to support his motion for sanctions. Rule 37(d)(1) addresses the situation where a deponent fails to appear for a deposition, but no rule contemplates a deponent’s unexcused exit from a deposition. The questioning in Holloman’s deposition probed his alleged involvement in a labor pool which was designed to compete with Tempcor. This subject matter formed the basis of Farris’s counterclaim which has subsequently been dismissed.
 

 In light of the dismissal of the counterclaim and the request by Plaintiffs’ counsel that Holloman’s claims be voluntarily dismissed, Plaintiff Holloman is dismissed from this action and Farris’s Motion for Sanctions [78-1] is DENIED.
 

 C.
 
 Farris’s Motion to Compel
 

 Farris’s Motion to Compel Discovery [78-2] seeks a determination regarding whether he can ask about union activity without violating 29 U.S.C. §§ 157
 
 &
 
 159. His motion is phrased in general terms, and does not comply with Local Rule 37.1(A)(2) which provides that a motion to compel must “[q]uote verbatim each disclosure, interrogatory, deposition question, ...” to which objection is taken. As the motion lacks specificity, there is no basis for the Court to make a ruling. Accord
 
 *1283
 
 ingly, Farris’s Motion to Compel [78-2] is DENIED.
 

 D.
 
 Plaintiffs’ Motion For Sanctions
 

 Plaintiffs seek sanctions [82-1] against Settle Down (1) for its failure to comply with this Court’s Order of December 3, 1998 which ordered Settle Down to respond to Plaintiffs’ outstanding discovery requests, and (2) for its numerous misrepresentations regarding the existence of some of the requested documents. The Court previously ordered Settle Down to make a good faith effort to determine whether these documents existed, and if those documents were found to exist, to produce them. Only after Plaintiffs filed their Motion to Compel did Settle Down produce Time Record History Reports, overtime lists and some documents provided to the Department of Labor. Plaintiffs are entitled to fees associated with filing their Motion to Compel. Plaintiff is DIRECTED to submit their fees associated with filing the Motion to Compel within 10 days from the entry of this Order. Defendant then has 10 days to respond.
 

 Settle Down claims many of the requested documents do not exist. In order to create a record on which Plaintiffs may rely and to prevent'unfair surprise at trial, a representative of Settle Down must file an affidavit attesting to the non-existence of these documents, and certifying that Settle Down has made a good faith effort to locate these documents. The Court declines to award fees for the Motion to Compel at this time.
 

 Accordingly, Plaintiff’s Motion for Sanctions [81-1] is GRANTED IN PART and DENIED IN PART.
 

 CONCLUSION
 

 Preston’s Motion for Partial Summary Judgment [88-1] against Richard Farris is GRANTED IN PART and DENIED IN PART. Farris is a joint employer for FLSA purposes. The amended complaint does not relate back. Whether a two or three year statute of limitations applies to the federal claims depends on whether the violations were willful and wanton.
 

 Plaintiff Preston’s Motion for Partial Summary Judgment [89-1] against Settle Down Enterprises, Inc., (“Settle Down”) is GRANTED IN PART and DENIED IN PART. Settle Down is subject to the FLSA. Whether a two or three year statute of limitations applies to the federal claims depends on whether the violations were willful and wanton.
 

 Defendant Richard Farris’s Motion for Partial Summary Judgment [90-1] is GRANTED IN PART and DENIED IN PART. The claims against him do not relate back to the filing of the original complaint. Whether a two or three year statute of limitations applies to the federal claims depends on whether the violations were willful and wanton. A jury must decide whether Plaintiffs’ waiting time and travel time are compensable. A genuine issue of material fact remains as to whether he was a “person responsible” for a violation of Georgia law prohibiting charging a fee to temporary workers for using equipment. The statute of limitations on this claim is two years. Farris is not subject to state laws governing the form of payment of wages.
 

 Defendant Settle Down’s Motion for Partial Summary Judgment [91-1] is GRANTED IN PART and DENIED IN PART. State law claims more than two years old must be dismissed. A jury must decide whether Plaintiffs’ waiting time and travel time are compensable. Whether a two or three year statute of limitations applies to the federal claims depends on whether the violations were willful and wanton.
 

 Farris’s Motion for Sanctions [78-1] is DENIED and Plaintiff Holloman is voluntarily DISMISSED from this action. Farris’s Motion to Compel [78-2] is DENIED as it lacks specificity.
 

 Plaintiff Robinson’s Motion to Compel [82-1] is DENIED with right to refile. Defendant Settle Down’s Motion for Pro
 
 *1284
 
 tective Order [80-1] is DENIED, and Mov-ant ECA’s Motion for Protective Order [79-1] is DENIED.
 

 Finally, Plaintiffs’ Motion for Sanctions [81-1] is GRANTED IN PART and DENIED IN PART.
 

 [1]
 

 . Plaintiffs coni end this Court's December 2, 1998 Order concluded that Farris was Plaintiffs' employer. It did not. The statement Plaintiffs rely on came in a section discussing Plaintiffs’ Motion to Amend, and must be read in light of the legal standard governing a motion to dismiss, which determines if allowing amendment would be futile.
 

 [2]
 

 . No express right of action is provided for violation of §§ 34-7-2 and 34-7-3, so Plaintiffs' recovery depends on the operation of § 51-1-6 which provides:
 

 When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may
 
 *1277
 
 recover for the breach of such legal duty if he suffers damage thereby. O.C.G.A. § 51-1-6 (1998).
 

 [3]
 

 . This conclusion would not apply to a worker who reported on a return ticket. To the extent a Plaintiff proves he was required to report back to Tempeor’s office before returning to a job site, that Plaintiff would be entitled to compensation for that time.