RICKY WHITEHEAD, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED PERSONS, PLAINTIFF v. SPARROW ENTERPRISE, INC., D/B/A LABOR FINDERS, DEFENDANT

No. COA04-208

(Filed 7 December 2004)

**1. Jurisdiction— North Carolina Wage and Hour Act—no exemption for temporary employment agency**

The trial court did not err by concluding that defendant temporary employment agency is not exempt from the jurisdiction of the North Carolina Wage and Hour Act, because plaintiff's claims arise from N.C.G.S. §§ 95-25.6 and 95-25.8 which address wage payment and withholding of wages respectively.

**2. Employer and Employee— wage withholding—transportation deduction—specific authorization**

A de novo review revealed that the trial court did not err by granting summary judgment in favor of defendant temporary employment agency based on defendant withholding class members' wages to pay for an optional transportation service to and from job sites, because: (1) defendant's house rules comply with the requirements of N.C.G.S. § 95-25.8(2)(a) as a specific authorization even though there is a range given for the dollar amount since it is sufficiently narrow to provide adequate notice to the class members, the deductions for transportation expenses are not automatic and are conditioned upon the class members specifically requesting use of the van pool each morning, and class members receive frequent and sufficient notice of the cost to use defendant's van pool; (2) defendant's house rules satisfy the formatting and content requirements under N.C. Admin. Code tit. 13, r. 12.0305(b) since the authorization form is written, signed by the class members on or before the payday for the pay period from which the deduction is made, includes the date signed, and states the reason for the deduction; and (3) the optional transportation service offered to the class

members is not an incident of nor is it necessary to the employment, and it does not matter that the trip is between defendant's home office and the job sites.

**3. Employer and Employee— wage withholding—waiting and traveling to work**

A de novo review revealed that the trial court did not err by granting summary judgment in favor of defendant temporary employment agency based on class members not being entitled to compensation under N.C.G.S. § 95-25.6 for time spent waiting for and traveling on defendant's optional transportation service, because: (1) plaintiff testified that defendant never told him that hours worked included wait time or travel time to and from the job site, and the employment contract does not provide for the compensation the class members seek; (2) the class members' wait or travel time is not a principal activity requiring compensation, but instead is preliminary and postliminary activity since the class members' idle time either before or after the workday is personal; and (3) the receipt of general protective equipment does not make travel time compensable under 29 C.F.R. § 785.38.

Appeal by plaintiff from order entered 21 November 2003 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 14 October 2004.

*Law Offices of Robert J. Willis, by Robert J. Willis, for plaintiff-appellant.*

*Richardson, Patrick, Westbrook & Brickman, LLC, by James L. Ward, Jr., and Rogers Townsend & Thomas, P.C., by Paul M. Platte, for defendant-appellee.*

TYSON, Judge.

Ricky Whitehead ("plaintiff") on behalf of those similarly situated (collectively, "the class members") appeal from entry of summary judgment in favor of Sparrow Enterprise, Inc. ("defendant") after the trial court found no violations of the North Carolina Wage and Hour Act ("the NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.* (2003)). We affirm.

## I. Background

Defendant is a temporary employment agency that hires individuals on a daily basis for casual labor. Defendant markets and

provides the temporary labor to businesses that periodically need additional workers.

Defendant's hiring policy is structured on a first come first serve basis. Individuals seeking work must arrive at defendant's office early in order to be considered available for employment. At their first hiring, the class members are required to sign the "House Rules." The "House Rules" discloses defendant's hiring process, the details and rules of employment, hours of operation, the hourly wage, hours worked, and standard deductions which include optional transportation expenses. Plaintiff signed the "House Rules" on 2 January 2001.

Upon arrival in the morning, the class members write their names on a sign-in sheet and wait for an assignment of available jobs. The "House Rules" specifically states such time is not compensable, "Hours worked and pay are determined from the time the worker starts working at the customer's establishment And (sic) ends when the work is completed at the customer's establishment." While waiting, the class members often eat breakfast, read a newspaper, watch television, talk, or sleep.

The class members who are offered work are called to the assignment desk and provided a description of the job and pay. If they accept the position, they are asked whether they have transportation available. If they do not, the class members will ride with either a fellow employee or in defendant's van. The cost to the class members is $1.00 each way. The "House Rules" explains the transportation program and cost to the participant.

After receiving work assignments, defendant provides general safety equipment like hard hats, boots, and gloves to those employees who would need them. The class members either wait for the van pool or secure their own transportation to the job site. They are allowed to do whatever they want during this period, so long as they arrive at the job site on time. Those who select defendant's van pool are not given any instructions about the job during the ride. Plaintiffs have the option to be paid at the end of the workday or at a later time.

On 12 June 2002, plaintiff, acting on behalf of himself and the class members, filed a class action complaint under Rule 23 of the North Carolina Rules of Civil Procedure asserting two claims. First, plaintiff argued the wage deductions for the communal transportation were illegal under N.C. Gen. Stat. § 95-25.8. Second, plaintiff argued employees who elect to use the optional transporta-

tion should be paid for time spent while both waiting for the van and riding to and from the job sites under N.C. Gen. Stat. § 95-25.6. Plaintiff sought redress solely under the NCWHA. Defendant answered on 16 January 2003.

Defendant filed a Motion for Summary Judgment on 16 September 2003. It asserted: (1) plaintiff agreed to both situations by signing enforceable contracts; (2) defendant is exempt from the jurisdiction of the NCWHA; and (3) plaintiff is not an adequate class representative to allow the class action to proceed.

On 21 November 2003, the trial court found the "material facts regarding these claims are not in significant dispute [and] [t]he issue . . . is whether or not the undisputed material facts of record establish a violation of the Wage and Hour Act." The trial court held plaintiff made no showing of a violation of the NCWHA and granted defendant's motion for summary judgment on both claims. Plaintiff appeals.

## II. Issues

The issues on appeal are whether: (1) defendant is exempt from the jurisdiction of the NCWHA; (2) the trial court properly granted summary judgment in favor of defendant on the class members' transportation deduction claim; and (3) the trial court erred in granting summary judgment in favor of defendant on the class members' time spent both waiting and traveling claim.

## III. Federal Statutes, Regulations, and Cases as Guidance

We note at the outset that the issues before us arise from employment and labor law, a substantive area monopolized by federal statutes, regulations, and case law. Plaintiff's claims are based on the NCWHA, N.C. Gen. Stat. § 95-25:1 *et. seq.* The NCWHA is modeled after the Federal Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 *et seq. Laborers' Int'l Union of North America, AFL-CIO v. Case Farms, Inc.*, 127 N.C. App. 312, 314, 488 S.E.2d 632, 634 (1997). The North Carolina Administrative Code ("the Code") states that "judicial and administrative interpretations and rulings established under [] federal law" may serve as a guide for interpreting North Carolina laws when our Legislature has adopted provisions of the FLSA. N.C. Admin. Code tit. 13, r. 12.0103 (June 2004).

We are not bound by decisions of Federal circuit courts other than those of the United States Court of Appeals for the Fourth

Circuit arising from North Carolina law. *Haynes v. State*, 16 N.C. App. 407, 409-10, 192 S.E.2d 95, 97 (1972) (citing *State v. Barber*, 278 N.C. 268, 179 S.E.2d 404 (1971)).

### IV. Standard of Review

We review a trial court's entry of summary judgment *de novo*. *Shroyer v. County of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002) (citing *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999)). Under *de novo* review, a reviewing court considers the matter anew, and it may substitute its own judgment for that of the trial court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citation omitted).

A grant of summary judgment is proper when: "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (quotation omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The moving party has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). Both this Court and the trial court must view the evidence in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. *Id.*

After a review of the record and hearing the parties' oral arguments, we conclude no genuine issues of material fact exist. We review the trial court's conclusions of law.

### V. Exemption from the NCWHA

[1] Defendant asserts, as an enterprise engaged in interstate commerce, its relationships with the class members are covered by the FLSA and not within the jurisdiction of the NCWHA. We disagree.

N.C. Gen. Stat. § 95-25.14(a) (2003) provides exemptions to employers from the NCWHA in limited circumstances, which states:

The provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), and G.S. 95-25.5 (Youth Employment), and the provi-

sions of G.S. 95-25.15(b) (Record Keeping) as they relate to these exemptions, do not apply to:

(1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act . . . .

Plaintiff's claims arise from N.C. Gen. Stat. §§ 95-25.6 and 95-25.8 which address Wage Payment and Withholding of Wages respectively. The statute defendant relies upon for exemption does not cover either section of the NCWHA. Defendant's argument is overruled.

## VI. Transportation Deduction Claim

[2] Plaintiff asserts defendant failed to comply with the North Carolina statutes and the Code, which provide when and how employers may deduct wages from employees' paychecks. We disagree.

### A. Specific Authorization of Wage Withholding

N.C. Gen. Stat. § 95-25.1 *et seq.* comprise the NCWHA. N.C. Gen. Stat. § 95-25.8 (2003) addresses wage withholding, which states:

An employer may withhold or divert any portion of an employee's wages when:

(1) The employer is required or empowered to do so by State or federal law, or

(2) The employer has a written authorization from the employee which is signed on or before the payday for the pay period from which the deduction is to be made indicating the reason for the deduction. Two types of authorization are permitted:

    (a) When the amount or rate of the proposed deduction is known and agreed upon in advance, the authorization shall specify the dollar amount or percentage of wages which shall be deducted from one or more paychecks, provided that if the deduction is for the convenience of the employee, the employee shall be given a reasonable opportunity to withdraw the authorization;

    (b) When the amount of the proposed deduction is not known and agreed upon in advance, the authorization need not specify a dollar amount which can be deducted from one or more paychecks, provided that the employee receives advance notice of the specific amount of any

> proposed deduction and is given a reasonable opportunity to withdraw the authorization before the deduction is made.

The statute offers employers two options of written authorization to deduct wages. First, N.C. Gen. Stat. § 95-25.8(2)(a) addresses deductions of a "known" sum of money, a specific authorization. N.C. Admin. Code tit. 13, r. 12.0305 (June 2004). Employees who agree to specific authorizations must receive from their employers an opportunity to withdraw the authorization before the deduction is made, "if the deduction is for the convenience of the employee . . . ." N.C. Gen. Stat. § 95-25.8(2)(a). Second, N.C. Gen. Stat. § 95-25.8(2)(b) refers to a blanket authorization, one made for an unknown amount of money. N.C. Admin. Code tit. 13, r. 12.0305. Before a deduction may be completed under a blanket authorization, the employee must receive notice of the specific amount and a reasonable opportunity to withdraw the authorization. N.C. Gen. Stat. § 95-25.8(2)(b).

The Code further requires valid wage deduction authorizations by employees to be: (1) written; (2) signed by the employee on or before the payday for the pay period for which the deduction is made; (3) show the date of signing by the employee; and (4) state the reason for the deduction. N.C. Admin. Code tit. 13, r. 12.0305(b). If the authorization is specific, the dollar amount or percentage of wages withheld must be provided. *Id.* Before an employer may deduct wages under a blanket authorization, it must first provide the employee: (1) advance notice of the specific amount of the proposed deduction; (2) a reasonable opportunity of at least three calendar days from the employer's notice of the amount to withdraw the authorization. N.C. Admin. Code tit. 13, r. 12.0305(d).

Each employee hired by defendant must read and sign defendant's form, the "House Rules." It includes the following language:

> Anyone choosing to accept transportation from Labor Finders, to one of our job sites, will be charged no less than .50 to and .50 from and no more than $1.00 to and $1.00 from the job site. Worker understands that this offer of transportation is for the worker's benefit and if worker chooses to accept transportation, worker authorizes Labor Finders to deduct the cost of that transportation in both overtime and non-overtime weeks.

This provision qualifies as a specific authorization under N.C. Gen. Stat. § 95-25.8(2)(a). The optional transportation service

offered by defendant and its associated cost is explained. Although a range is given for the dollar amount, we hold it is sufficiently narrow to provide adequate notice to the class members. We further note the deductions for transportation expenses are not automatic. They are conditioned upon the class members specifically requesting use of the van pool each morning. Only then are wages withheld. The class members receive frequent and sufficient notice of the cost to use defendant's van pool. We hold the "House Rules" complies with the requirements of N.C. Gen. Stat. § 95-25.8(2)(a) as a specific authorization.

Finally, the "House Rules" satisfies the Code's formatting and content requirements. The authorization form is written, signed by the class members on or before the payday for the pay period from which the deduction is made, includes the date signed, and states the reason for the deduction. N.C. Admin. Code tit. 13, r. 12.0305(b). We hold that defendant's "House Rules" form and wage deduction procedure complies with N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305.

This portion of plaintiff's assignment of error is overruled.

### B. Incident of and Necessary to Employment

Plaintiff contends the optional transportation services offered by defendant to its employees benefit defendant and are considered neither wages nor deductible. We disagree.

Employers may "count as wages the reasonable cost 'of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees.' " *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (2002) (quoting 29 U.S.C. § 203(m)). The employer may deduct the reasonable cost from the employee's paycheck, even if the net amount falls below the minimum wage. 29 C.F.R. § 531.27 (2004).

The United States Department of Labor ("USDOL") defines "other facilities" as:

> Meals furnished at company restaurants or cafeterias or by hospitals, hotels, or restaurants to their employees; meals, dormitory rooms, and tuition furnished by a college to its student employees; housing furnished for dwelling purposes; general merchandise furnished at company stores and commissaries (including

articles of food, clothing, and household effects); fuel (including coal, kerosene, firewood, and lumber slabs), electricity, water, and gas furnished for the noncommercial personal use of the employee; transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not *an incident of and necessary to the employment.*

29 C.F.R. § 531.32(a) (2004) (emphasis supplied). If the "facilities" are primarily for the benefit of the employer, the cost may not be included in computing wages and the employer must "reimburse the expense up to the point the FLSA minimum wage provisions have been met." *Arriaga,* 305 F.3d at 1241-42; 29 C.F.R. § 531.3(d)(1) (2004). The issue here is whether the optional transportation service offered to the class members is "an incident of and necessary to the employment" and primarily for the benefit of defendant. 29 C.F.R. § 531.32(a).

Plaintiff cites *Arriaga* as persuasive authority to show the optional transportation service was "an incident of and necessary to" defendant's business and primarily for defendant's own benefit. 305 F.3d at 1228. There, domestic agricultural employers hired nonimmigrant aliens from Mexico as farm laborers to work on a seasonal basis. *Id.* at 1232. Laborers who passed the interview process paid for their own passage to the United States, visa costs, and various recruiting fees. *Id.* at 1234. After deducting these expenses from wages earned, the net income fell below the statutory minimum wage. *Id.* at 1231-32.

The Eleventh Circuit held the transportation costs were "an incident of and necessary to the employment" and the employers must reimburse the laborers for expenses paid in coming to the employment. *Id.* at 1242. The court noted the determining factor was the transportation costs were "an inevitable and inescapable consequence of having foreign . . . workers employed in the United States." *Id.* The court carefully distinguished that situation from one where an employer "hires from its locale." *Id.* Further, the court distinguished between costs "arising from the employment itself and those that would arise in the course of ordinary life" by interpreting "other facilities" as meaning "employment-related costs . . . that would arise as a normal living expense." *Id.* at 1242-43.

We find *Arriaga* persuasive, but not as plaintiff argues. The paramount distinction between the facts here and therein *Arriaga* is

exactly what the Court discussed. In *Arriaga*, transportation expenses were both inevitable under the program employers used to recruit and hire foreign workers, and is substantially different from normal commuting costs. Here, defendant's transportation service is one of several options available to the class members to travel to and from job sites. They are free to use their own vehicles, ride public transportation, walk, ride with a co-worker, or defendant's van. The choice facing the class members is the same encountered by every worker every day and is not unique to defendant's business. It matters not that the trip is between defendant's home office and the job sites. *Vega v. Gaspar*, 36 F.3d 417, 425 (5th Cir. 1994).

We find the optional transportation service offered by defendant falls within the category of "other facilities" and may be counted towards wages. Defendant properly deducts the associated transportation cost from the class members' paychecks in compliance with N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305.

Plaintiff has failed to show and we find no evidence in the record that a genuine issue of material fact exists or defendant improperly withheld wages from the class members. Defendant's authorization form, the "House Rules," satisfies the requirements of both N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305. The class members received sufficient notice of the transportation option, its cost, and the process of electing to use the van pool and the subsequent wage withholding. This assignment of error is overruled.

## VII.  Time Spent Waiting and Traveling to and from Work

[3] Plaintiff contends that time spent waiting and traveling between defendant's office and the job sites is compensable under N.C. Gen. Stat. § 95-25.6 (2003), which states, [e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance. We disagree.

## A.  N.C. Gen. Stat. § 95-25.6

Plaintiff argues defendant is breaching "an express oral if not written contract" between the parties requiring defendant to pay the class members in accordance with the FLSA, which triggers the requirements of N.C. Gen. Stat. § 95-25.6. Plaintiff concedes the

"House Rules" specifically addresses this issue in defendant's favor. However, he requests this Court to "look[] beyond the language contained in the [House Rules]" to federal statutes, regulations, and case law, to find waiting and traveling time compensable under these circumstances.

The applicable provision of defendant's employment contract, the "House Rules," states:

> We open between 5:30 & 6:30 AM. To improve your chance of employment, you may choose to "show up" at the earliest possible time and no less than one hour before a repeat ticket's delivery time. This is entirely voluntary on the worker's part. During the waiting time in our lobby, the worker is waiting to be engaged rather than engaged to Wait (sic). Hours worked and pay are determined from the time the worker starts working at a customer's establishment And (sic) ends when the work is completed at the customer's establishment . . . . The worker understands that waiting time for assignments at Labor Finders, and travel time from Labor Finders to the customer's establishment and back, as well as waiting to be picked up from the job site, is not compensable work time.

The contract defines "hours worked" as beginning when "the worker starts working at a customer's establishment And (sic) ends when the work is completed at the customer's establishment."

The record on appeal indicates the class members will only be compensated for time spent working at the job sites. It includes a copy of the "House Rules" detailing the compensation process with plaintiff's signature. Plaintiff also testified that defendant never told him "hours worked" included wait time or travel time to and from the job site.

The employment contract does not provide for the compensation the class members seek. Plaintiff admitted he understood this policy and a copy of the agreement bears his signature. We find no violation of N.C. Gen. Stat. § 95-25.6. We now consider whether federal law requires defendant to compensate the class members for time spent waiting and traveling.

### B. The Portal to Portal Act

The Portal to Portal Act, 29 U.S.C. § 254, does not require employers to pay employees for the following activities:

(1) walking, riding, or traveling to and from the actual place of performance of the *principal activity* or activities which such employee is employed to perform, and

(2) activities which are *preliminary* to or *postliminary* to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (2003) (emphasis supplied). The issue before us is whether the class members' wait and travel time are principal activities and thus compensable. We hold that they are not.

Employers must compensate employees for time spent waiting and traveling when "it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity." *Vega*, 36 F.3d at 424, 425 (citing The Portal to Portal Act, 29 U.S.C. § 254). Principal activities are those duties integral and indispensable to the employer's business. *Karr v. City of Beaumont, Tex.*, 950 F. Supp. 1317, 1322 (E.D.Tex. 1997) (citing *Truslow v. Spotsylvania County Sheriff*, 783 F. Supp. 274, 277 (E.D. Va. 1992) (citing 29 U.S.C. § 254(a)(2), (b)), *aff'd per curiam*, 993 F.2d 1539 (4th Cir. 1993). They include duties " 'performed as part of the regular work of the employees in the ordinary course of business[,] work [that] is necessary to the business . . . . [and also] primarily for the benefit of the employer.' " *Vega*, 36 F.3d at 424 (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)).

Preliminary activities are those "engaged in by an employee before the commencement of his 'principal' activity or activities." 29 C.F.R. § 790.7 (2004). " '[P]ostliminary activity' means an activity engaged in by an employee after the completion of his 'principal' activity or activities . . . ." *Id.* Preliminary and postliminary activities are spent primarily for the employees' own interests, completed at the employees' convenience, and not necessary to the employer's business. *Jerzak v. City of South Bend*, 996 F. Supp. 840, 848 (N.D.Ind. 1998).

## 1. Waiting Time

Plaintiff asserts he and the class members should be compensated for waiting time both between receiving job assignments and physically commencing work at the job sites and between stopping

work and returning to defendant's office. We consider two factors in determining whether plaintiff's waiting time is a principal activity and compensable under The Portal to Portal Act. The first issue is whether the time spent is predominantly to benefit the employer and integral to the job. *Preston v. Settle Down Enterprises, Inc.*, 90 F. Supp. 2d 1267, 1278-79 (N.D.Ga. 2000) (citations omitted); *Vega*, 36 F.3d at 425 (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir. 1990)). The second issue is whether the employee is able to use the time for their own personal activities. *Vega*, 36 F.3d at 426 (citing *Mireles*, 899 F.2d at 1413).

Defendant is in the business of providing temporary labor to its customers on an as-needed basis. Customers request defendant's services when extra help is needed on any variety of construction projects. Defendant hires enough workers on a daily basis to satisfy that demand. Workers receive assignments because work is available on that particular day. Defendant does not retain individuals to wait for customers to request labor services.

After receiving a work assignment, the class members elect how they will travel from defendant's office to the job site. They can use their own vehicle, ride public transportation, walk, car pool with another driver, or sign up for defendant's optional transportation service. Defendant does not restrict the mode, the class members' activities while they wait for the ride, or their activities in transit. The class members are free to do as they please. At the end of the day, defendant gives the class members the option whether to return to the office to get their paycheck at that time or at a later date.

Based on this evidence, we hold the class members' time spent waiting is a preliminary and postliminary activity and noncompensable. The class members' principal activity, that which defendant hired them for, is to work for customers on a daily basis. Temporary labor is the entire scope of defendant's business. Customers pay for that service, which begins upon arrival at the job site and stops at the end of the work day. The class members' idle time either before or after the workday is personal. Many spend waiting time reading the newspaper, sleeping, drinking coffee, eating meals, watching television, or socializing with other waiting workers.

The class members' time spent waiting directly correlates to their choice of transportation. They are free to spend that time as they wish. It is neither beneficial nor indispensable to defendant's business. We decline to extend "hours worked" to include the class

members' waiting time prior to arrival at the job site and at the end of the day.

## 2. Travel Time

Travel time is only compensable under The Portal to Portal Act if it is a principal activity of the employee. 29 U.S.C. § 254. Normal commuting from home to work and back is considered ordinary travel and not a "principal activity" absent a contract stating otherwise. 29 U.S.C. § 254; 29 C.F.R. §§ 785.34 and 785.35 (2004). Travel from an employer's campus to the "actual place of performance" is noncompensable. 29 C.F.R. § 790.7(e) (2004). However, travel between job sites *after* work has begun for the day is compensable. *Wirtz v. Sherman Enterprises, Inc.*, 229 F. Supp. 746, 753 (1964) (emphasis supplied); 29 C.F.R. § 785.38 (2004).

Plaintiff relies heavily on *Preston*, 90 F. Supp. 2d 1267, in arguing that travel time to and from the job sites is compensable as a principal activity. There, the court addressed this same issue. Similar to the present case, the defendant provided temporary labor to customers on a daily basis. *Id.* at 1272. Laborers hired were furnished transportation from the defendant's office to the job sites. *Id.* at 1273. The court analyzed the issue by reviewing 29 C.F.R. § 785.38, which states, in part:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

Based on this regulation, the court considered three important factors: (1) whether workers were required to meet at the defendant's office before going to the job site; (2) whether workers performed labor before going to the job site; and (3) whether workers picked up and carried tools to the job site. *Preston*, 90 F. Supp. 2d at 1280-81. Factors two and three did not apply in *Preston. Id.* at 1280. However, the court ruled on factor one that "arriving at a business on one's own initiative seeking employment" is not the same as an employer requiring an employee to report at a meeting place. *Id.* at 1280-81. Thus, "hours worked" did not accrue until after arrival at the job site.

. Applying the same analysis here, we find identical answers to factors one and two. First, defendant does not require employees to report at its office at a certain time. Rather, it established the policy for laborers to follow if they were interested in seeking employment from defendant on a daily basis. Second, the class members do not perform any work either at defendant's office, or in transit to the job sites. Third, unlike *Preston*, the record indicates that the class members are provided personal protective equipment after receiving an assignment and before reporting to the job site. We address factor three, the picking up and carrying of tools to the job site.

In *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345 (10th Cir. 1986) and *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552 (10th Cir. 1958), the courts found travel time compensable as an indispensable part of the employees' jobs. Employer-defendants in both cases required their employees to transport specialized equipment necessary to service oil wells. *Crenshaw*, 798 F.2d at 1346; *D A & S Oil Well Servicing, Inc.*, 262 F.2d at 553-54. In an unpublished opinion, the District Court for the Eastern District of Kentucky held that in situations where employees are transporting specialized equipment to the job site, "it can be concluded that the transportation of specialized equipment, provided by the employer, is work in and of itself." *Spencer v. Auditor of Public Accounts*, No. 88-54, 1990 U.S. Dist. Lexis 1076 (E.D.Ky. Jan. 30, 1990).

The USDOL addressed this issue in 29 C.F.R. § 790.7, its own expansive interpretation of "preliminary" and "postliminary" activities. The regulation distinguished between an employee transporting heavy equipment and ordinary hand tools. 29 C.F.R. § 790.7(d) (2004). In considering heavy equipment, the regulation states the employee's travel "is not segreable from the simultaneous performance of his assigned work (the carrying of the equipment, etc.) . . . ." and does not fall under the noncompensable travel outlined by The Portal to Portal Act. *Id.*

We agree with this distinction between the transportation of specialized and heavy equipment and the non-unique protective equipment issued the class members by defendant. The record indicates the class members receive hard hats, boots, and gloves. These implements are not specialized and are used in a breadth of manual labor jobs. It is a different situation from an employee transporting specialized vehicles, tools, or heavy equipment necessary to perform highly sophisticated work. The receipt of nonspecialized protec-

**WHITEHEAD v. SPARROW ENTER., INC.**

[167 N.C. App. 178 (2004)]

tive equipment does not make travel time compensable under 29 C.F.R. § 785.38. If its issuance constituted the beginning of "hours worked," employers could just wait until employees were at the job site before passing them out to save money.

We note further that the Fifth Circuit encountered the issue of compensable travel time in *Vega*, 36 F.3d 417. The defendant, a farm laborer contractor, provided its employee-laborers transportation, for a fee, to and from the farm sites. *Id.* at 423. The court held the traveling time was preliminary and postliminary activity and not compensable. *Id.* at 425. It based its decision on factors present in the case at bar. First, the laborers performed no work prior to getting on the bus in the morning. *Id.* Second, the defendant offered the transportation as an option to the workers and did not require its usage. *Id.* Third, not all of the laborers elected to use the transportation. *Id.* The court concluded the travel from the defendant's office to the farm sites was "an extended home-to-work-and-back commute." *Id.*

These factors, together with our analysis of *Preston*, compels us to hold that class members' travel time is a preliminary and postliminary activity and is noncompensable. This assignment of error is overruled.

## VIII. Conclusion

Defendant complies with N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305 in withholding the class members' wages to pay for an optional transportation service to and from job sites. The class members are not due compensation for time spent waiting for and traveling on defendant's optional transportation service under N.C. Gen. Stat. § 95-25.6. The trial court's grant of summary judgment is affirmed.

Affirmed.

Judges BRYANT and LEVINSON concur.