ROBERT A. LEVERETTE, RICKY WHITEHEAD, AND JOHN ALLEN CLARK, BOTH INDI-
VIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED PERSONS, PLAINTIFFS V.
LABOR WORKS INTERNATIONAL, LLC, LABOR WORKS INTERNATIONAL
D/B/A LABOR WORKS SOURCE-RALEIGH, LLC, LABOR WORKS SOURCE-
GREENSBORO, LLC, LABOR WORKS SOURCE-DURHAM, LLC, AND BATTS,
TEMPORARY SERVICES, INC., LABOR WORKS SOURCE-RALEIGH, LLC, LABOR
WORKS SOURCE-DURHAM, LLC, LABOR WORKS SOURCE-GREENSBORO, LLC,
BATTS TEMPORARY SERVICES, INC. D/B/A LABOR WORKS OR LABOR WORLD,
BILL C. SCHLEUNING, AND SEAN FORE, DEFENDANTS

No. COA06-78

(Filed 7 November 2006)

## 1. Class Actions— ruling on summary judgment before deciding motion for class certification

The trial court did not abuse its discretion by ruling on defendants' motion for summary judgment before it decided plaintiffs' motion for class certification.

## 2. Employer and Employee— hours worked—waiting to be transported to jobs—rental of safety equipment—submission to breathalyzer exam

Time that day laborers spent waiting at defendant temporary employment agencies' offices for transportation to job sites, time spent in defendants' vans going to and from job sites, and time spent at defendants' offices taking breathalyzer tests and renting safety equipment for the jobs were not compensable "hours worked" under the N.C. Wage and Hour Act or under the federal Portal to Portal Act, 29 U.S.C. § 254, because: (1) the Portal to Portal Act provides that employers must compensate employees for time spent waiting and traveling only when it is part of a principal activity or for those duties integral and indispensable to the employer's business, but not if it is a preliminary or postliminary activity; (2) no laborer was required to rent or purchase safety equipment as each could either provide his own equipment or decline any job ticket on which equipment was required, and no specialized safety equipment or tools were required on the jobs offered by defendants; (3) the van transportation provided by defendants was essentially home-to-work travel not compensable under the FLSA or NCWHA as "hours worked" and not "an incident of and necessary to the employment;" (4) submission to a breathalyzer exam was not an activity which laborers were hired to perform and was a precondition to employment; and (5)

**LEVERETTE v. LABOR WORKS INT'L, LLC**

[180 N.C. App. 102 (2006)]

defendants did not require potential employees to arrive at their offices at any particular time. Furthermore, wage deduction authorization forms used by defendants for transportation and safety equipment rental met the requirements of the N.C. Wage and Hour Act.

**3. Employer and Employee— enterprise—summary judgment**

The trial court did not err by determining there was no genuine issue of material fact that corporate defendants were not part of an enterprise under N.C.G.S. § 95-25.2(18) and by granting summary judgment in their favor, because deposition testimony that each of the limited liability companies ultimately deposited their funds into an account maintained by one company does not give rise to an issue of fact as to whether these entities engaged in related activities performed through a unified operation or common control for a common business purpose as required by FLSA.

Appeal by plaintiffs from an order entered 12 September 2005 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 23 August 2006.

*Robert J. Willis for plaintiff-appellants.*

*Bailey & Dixon, LLP, by David Wisz and Kenyann Brown Stanford, for defendant-appellees.*

*Carol Brooke for North Carolina Justice Center, amicus curiae.*

BRYANT, Judge.

Robert A. Leverette, Ricky Whitehead and John Allen Clark (plaintiffs) appeal from an order entered 12 September 2005 granting Labor Works International, L.L.C., Batts Temporary Services, Bill C. Schleuning and Sean Fore (collectively defendants') motion for summary judgment. For the reasons stated below, we affirm.

*Facts/Procedural History*

Defendants operate[1] as "daily work, daily pay" temporary services with locations in Raleigh, Durham, and Greensboro, North Carolina. Defendants' offices provide additional workers for jobs

---

1. Defendant Batts operated the office located in Raleigh, North Carolina until 31 December 2001, when Labor Works Source-Raleigh, L.L.C. became the legal entity operating that business.

which entail temporary light industrial labor and hire day laborers on a first come, first served basis. The Raleigh office opens at 5:30 a.m. to begin dispensing job tickets to those individuals in search of work. First time applicants are asked to complete an employment application provided by defendants. Defendants make van transportation available to employees to and from the job site; use of van transportation is voluntary and based upon each employee's transportation needs. A section of the employment application allows an applicant to sign the "Voluntary Payroll Deduction for Van Use":

> I understand that I am not required by Batt's [sic] to use the Van Service offered by Batt's [sic]. I further understand and acknowledge that if I voluntarily elect to ride in the Batt's [sic] van, that I will be charged $4.00 and hereby authorize these deductions. I also understand that the amount charged for Van Transportation is subject to vary without notice.

The amount of the fee deducted from an individual's wages for transportation service is further stated on signs posted in the Raleigh office as well as inside each transportation van and updated accordingly. Defendants' clients often required safety equipment such as goggles, hard hats, gloves, and boots for employees to use while working at a particular job site. Those individuals employed by defendants who do not own this type of safety equipment may elect to purchase or rent the equipment from defendants and must sign the "Voluntary Payroll Deduction for Safety Equipment" section of the Batts employment application. The purchase price or rental fee is then deducted from the individual's daily wages at the end of the workday. The amount of the fee to be deducted is stated in the employment application itself, as well as on signs posted in defendants' offices.

In addition to signing the wage deduction forms for transportation and equipment purchase/rental, it is defendants' policy to submit every prospective employee to a breathalyzer exam prior to sending the employee to the job site. An individual whose breathalyzer result is positive for alcohol will not be permitted to work on that day. After having passed the breathalyzer examination, an employee may use their own transportation, walk to the assigned job site, or board defendants' transportation van if desired. Once a workday is complete, defendants' van returns to each job site to pick up any employees desiring to use the transportation service. These employees are returned to defendants' office and are then issued a paycheck accord-

ing to the time listed on their job tickets by the supervisor on the job site. Employees are paid an hourly wage in accordance with the North Carolina Wage and Hour Act (NCWHA) and the Federal Wage and Hour Laws for the amount of time they spend under the client's supervision on the job site. Deductions are made from each daily paycheck, as appropriate, for any transportation and/or equipment rental or purchase charges. An individual who performs well on a job site may return the next day for work on a "repeat ticket." When an individual earns a "repeat ticket," defendants request the individual return to defendants' office the next day one hour prior to the start time of the job to take the mandatory breathalyzer as a pre-condition to employment that day. There is no specific requirement that the employee comply with this request, however, or even that they work the "repeat ticket" the next day.

In the instant case, plaintiffs worked exclusively through defendants' Raleigh office. Plaintiff Leverette first sought work with defendants on 6 November 2000. On that date, Leverette filled out defendants' employment application, signing the "Voluntary Payroll Deduction for Van Use" section. However, Leverette did not sign the "Voluntary Payroll Deduction for Safety Equipment" section of the application and no deductions were ever taken from his wages for the rental or purchase of safety equipment. Leverette worked numerous temporary jobs through defendants' Raleigh office from November 2000, through approximately 20 June 2001, utilizing the transportation service frequently. During that seven month time period, defendants deducted a total of $549.00 for Leverette's use of the transportation service.

Plaintiff Whitehead also sought temporary work through defendants in November 2000. At that time, Whitehead filled out the employment application, but did not sign the "Voluntary Payroll Deduction for Van Use" or "Voluntary Payroll Deduction for Safety Equipment" sections of the application. Whitehead testified that he had no knowledge as to why those sections were unsigned and stated the sections were neither knowingly nor intentionally left unsigned. Whitehead worked temporary jobs through defendants on six days between 3 November 2000 and 10 November 2000, utilizing the transportation service each day. During that time, defendants deducted a total of $18.00 for his use of the transportation service. No deductions were ever made for the rental or purchase of safety equipment.

Plaintiff Clark first sought temporary work through defendants on 15 August 2003. On that date, he filled out the employment appli-

cation, signing both the "Voluntary Payroll Deduction for Van Use" and "Voluntary Payroll Deduction for Safety Equipment" sections of the application. Clark worked temporary jobs through defendants' Raleigh office on twenty-six days between 15 August 2003 and 6 July 2004, utilizing the van service several times. A total of $40.00 was deducted during this time for Clark's use of defendants' transportation service, and a total of $5.50 was deducted for four occasions on which Clark elected to rent safety equipment. None of the plaintiffs held a North Carolina driver's license at the time of their employment with defendants. None of them had access to a vehicle or other means of transportation. Plaintiffs relied on either public transportation or defendants' van service to travel to and from the job site.

Plaintiff Robert Leverette (Leverette) instituted this action on 21 February 2002. Batts Temporary Service, Inc., Lorraine Schleuning, Bill C. Schleuning, and Sean Fore were initially named as defendants. On two different occasions, the complaint was amended to add Ricky Whitehead (Whitehead) and John Allen Clark (Clark) as additional plaintiffs; and Labor Works International, L.L.C., Labor Works Source-Raleigh, L.L.C., Labor Works Source-Greensboro, L.L.C., and Labor Works Source-Durham, L.L.C. were added as additional defendants. The complaint was also amended to dismiss the action as to Lorraine Schleuning. On 15 March 2005, plaintiffs filed a Motion for Partial Summary Judgment as to liability. Defendants filed an Answer in response to plaintiffs' Second Amended Complaint on 18 March 2005. Defendants' Motion for Summary Judgment and plaintiffs' Motion for Class Certification were scheduled for hearing on 3 May 2005. The trial court declined to hear the class certification motion at that time. Instead, the class certification motion was heard on 27 July 2005, but was never ruled on by the trial court. By Order dated 12 September 2005, the trial court denied plaintiffs' Motion for Partial Summary Judgment and granted defendants' Motion for Summary Judgment. Plaintiffs appeal.

---

On appeal plaintiffs argue the trial court erred: (I) by ruling on defendants' motion for summary judgment before it decided plaintiffs' motion for class certification; (II) in granting defendants' motion for summary judgment; and (III) in determining there was no genuine issue of material fact that Labor Works International, L.L.C., Labor Works Source-Raleigh, L.L.C., Labor Works Source-Durham, L.L.C. and Labor Works Source-Greensboro, L.L.C. were not part of an "enterprise" under N.C. Gen. Stat. § 95-25.2(18).

On cross-appeal, defendants argue the trial court erred: (IV) in denying defendants' motion for summary judgment as to plaintiff Whitehead based on statute of limitations; and (V) denying defendant Schleuning and Fore's motion for summary judgment where plaintiffs failed to forecast any evidence of individual liability.

I

**[1]** Plaintiffs first argue the trial court erred by ruling on defendants' motion for summary judgment before it decided plaintiffs' motion for class certification. We disagree.

The trial court's determination of the sequence in which motions will be heard is reviewed on an abuse of discretion standard. *Berkeley Fed. Sav. & Loan Ass'n v. Terra Del Sol*, 111 N.C. App. 692, 710, 433 S.E.2d 449, 458 (1993). The trial court has discretion in addressing summary judgment arguments prior to class certification. *See Gaynoe v. First Union Corp.*, 153 N.C. App. 750, 756, 571 S.E.2d 24, 28 (2002). In *Reep v. Beck*, 360 N.C. 34, 619 S.E.2d 497 (2005), our Supreme Court recently rejected any argument that dispositive motions cannot properly be considered until after ruling on a motion for class certification, and further recognized the wide latitude that trial judges are given in this regard. As the Court stated, "[t]his Court is confident that, in determining the sequence in which motions will be considered, North Carolina judges will continue to be mindful of longstanding exceptions to the mootness rule and other factors affecting traditional notions of justice and fair play." *Id.* at 40, 619 S.E.2d at 501.

In the instant case, plaintiff Leverette filed an initial motion for class certification in April 2002, which was not calendared for hearing until December 2002, after plaintiffs' complaint was amended to add plaintiff Whitehead. A ruling was not issued on plaintiffs' initial class certification motion. Plaintiffs voluntarily withdrew their second class certification motion in January 2003. After this matter was dismissed and remanded by this Court, plaintiffs amended their complaint a second time to add plaintiff Clark and the Labor Works Source defendants. *See Leverette v. Batts Temp. Servs.*, 165 N.C. App. 328, 598 S.E.2d 192, *disc. rev. denied*, 359 N.C. 69, 604 S.E.2d 666 (2004). Plaintiffs filed their third motion for class certification on 21 February 2005, but did not calendar that motion for hearing until 3 May 2005. Also scheduled for hearing on that date was defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment. The trial court declined to hear the class certification

motion on 3 May 2005, so plaintiffs calendered the class certification motion for 27 July 2005, before a different judge. No ruling was issued on the class certification motion prior to the issuance of a ruling on the pending summary judgment motions by Order dated 12 September 2005. In light of this procedural history and the nature of plaintiffs' claims, the trial court properly exercised its discretion to refrain from ruling on the motion for class certification until first deciding the cross motions for summary judgment. Plaintiffs have failed to establish that the trial court abused its discretion. This assignment of error is overruled.

## II

[2] Plaintiffs argue the trial court erred in granting defendants' motion for summary judgment because plaintiffs contend genuine issues of material fact and law existed. Specifically, plaintiffs argue the trial court erred in determining the meaning of the term "hours worked." We disagree.

A trial court's ruling on a motion for summary judgment is reviewed *de novo. Coastal Plains Utils, Inc. v. New Hanover County,* 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004). All evidence must be considered in the light most favorable to the non-movant. *Liberty Mut. Ins. Co. v. Pennington,* 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002).

Plaintiffs claim they should have received wages for the time they spent waiting at defendants' offices to be transported to the job site, as well as for any time spent traveling to and from each job site in defendants' van, arguing this time was part of "hours worked" under the North Carolina Wage and Hour Act (NCWHA). North Carolina General Statutes, Section 95-25.6, part of the NCWHA, provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." The NCWHA further provides that the term "hours worked" means "all time an employee is employed," and the term "employ" in turn means "suffer or permit to work." N.C. Gen. Stat. § 95-25.2 (3) & (8); 29 U.S.C. § 203 (g). Defendants concede they intended to pay plaintiffs for all hours considered to be work under federal or North Carolina law, however there is disagreement between the parties that time spent waiting or traveling to the job site was compensable. Job applications completed by plaintiffs do not indicate plaintiffs would receive compensation for the time they spent waiting to work or traveling to a job site. The evidence also shows plaintiffs were free to do as they

wished prior to receiving a job assignment and afterward, even while waiting for defendants' van to transport them.

The recent cases of *Whitehead v. Sparrow Enter.*, 167 N.C. App. 178, 605 S.E.2d 234 (2004) and *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 605 S.E.2d 254 (2004) address whether such waiting to work time is compensable under the law. In both cases, this Court considered class action claims by day laborers against their temporary agency employers alleging violations of the NCWHA based on the withholding of wages for transportation and failure to compensate for waiting and travel time. Pursuant to the Portal to Portal Act (PPA), 29 U.S.C. § 254, employers must compensate employees for time spent waiting and traveling only when it is part of a principal activity or for "those duties integral and indispensable to the employer's business, . . . but not if it is a preliminary or postliminary activity." *Whitehead*, 167 N.C. App. at 189, 605 S.E.2d at 241 (citations omitted); *Hyman*, 167 N.C. App. at 145, 605 S.E.2d at 262 (citations omitted).

Two factors should be considered in determining whether an employee's waiting time is compensable under the PPA: (a) "whether the time spent is predominantly to benefit the employer and integral to the job;" and (b) whether the employee "is able to use the time for their own personal activities." *Whitehead*, 167 N.C. App. at 190, 605 S.E.2d at 241-42. As this Court stated:

> The class members' time spent waiting directly correlates to their choice of transportation. They are free to spend that time as they wish. It is neither beneficial nor indispensable to defendant's business. We decline to extend "hours worked" to include the class members' waiting time prior to arrival at the job site and at the end of the day.

*Id.* As in *Whitehead* and *Hyman*, defendants hire individuals on a daily basis based upon their customers' demands on that particular day. These individuals receive assignments only if work is available that day. After an employee receives a job ticket, the individual can choose to ride the company transportation van to the job site or utilize a private or public alternative means of transportation to the job site. Individuals have free time while they wait to ride in defendants' transportation van. Any employee who chose to use defendants' van for transportation to the job site remained at defendants' office to hear their name called for the van similar to the *Whitehead* plaintiffs. *See Whitehead*, 167 N.C. App. at 190, 605 S.E.2d at 242. The employer

in *Whitehead*, as here, encouraged those employees with "repeat tickets" to show up one hour before their transportation time if they were using the employer's van. *Id.* at 188, 605 S.E.2d at 240. Here, defendants made the purchase or rental of protective clothing and equipment available to employees if customers required the employees to be equipped with such gear and the employees did not possess their own protective equipment. Additionally, defendants would not hire an employee on any given day unless the employee took and passed a breathalyzer exam as a condition of employment. The waiting time for the breathalyzer results in this case was not "predominantly for the benefit of the employer" and plaintiffs were able to use the waiting time "for their own personal activities." *Whitehead*, 167 N.C. App. at 190, 605 S.E.2d at 241-42.

Time spent traveling to work is only compensable under the PPA and NCWHA if it is a principal activity of the employee. *Whitehead*, 167 N.C. App. at 191, 605 S.E.2d at 242. Specifically, the PPA does not require employers to pay employees for the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). In *Whitehead*, this Court considered three factors: "(1) whether workers were required to meet at the defendant's office before going to the job site; (2) whether workers performed labor before going to the job site; and (3) whether workers picked up and carried tools to the job site." *Whitehead*, 167 N.C. App. at 191-92, 605 S.E.2d at 242-43 (citation omitted). In applying these factors, the Court found that:

> First, defendant does not require employees to report at its office at a certain time. Rather, it established the policy for laborers to follow if they were interested in seeking employment from defendant on a daily basis. Second, the [workers] do not perform any work either at defendant's office, or in transit to the job sites.

*Id.* The Court then addressed the third factor (i.e., whether workers picked up and carried tools to the job site) and found that the hard

hats, gloves, and boots workers received from the employer were not "specialized equipment" and, therefore, the receipt of this type of general protective equipment does not make travel time compensable under 29 C.F.R. § 785.38 or the PPA. *Id.* at 192-93, 605 S.E.2d at 243. As a result, the temporary workers' travel time from the employer's office to the "actual place of performance" was held to be noncompensable, essentially being "an extended home-to-work-and-back commute." *Id.* at 191-93, 605 S.E.2d at 242-43 (citations omitted).

Our Court of Appeals analysis of the Portal to Portal Act in *Whitehead* and *Hyman* was not altered by the more recent US Supreme court decision in *IBP, Inc. v. Alvarez,* 546 U.S. 21, 163 L. Ed. 2d 288 (2005). In *Alvarez,* the Court held that time spent by employees donning (putting on) and doffing (removing) protective gear and clothing, as well as time spent walking to and from the protective gear changing area was compensable and therefore not excluded from coverage under the Fair Labor Standards Act by the Portal to Portal Act. However, the time spent waiting to don protective gear was not a principal activity and therefore was excluded under the FLSA. *Alvarez,* 546 U.S. at —, 163 L. Ed. 2d at 294.

In the instant case, plaintiffs were not required by defendants to don or doff specialized protective gear and clothing at the defendants' offices, but rather had safety equipment made available to them for certain job sites and as rented by the individual on an as needed basis. No specialized safety equipment or tools were utilized on the jobs offered by defendants; rather, the only equipment picked up and carried to job sites is general safety equipment such as boots, gloves, and eye goggles, depending upon the particular job assignment.

North Carolina General Statute, Section 95-25.8 allows an employer to take wage deductions if: (1) the employer obtains written authorization from the employee in the form specified by North Carolina law; or (2) the deduction is one which is otherwise permitted under state or federal law. *See* N.C.G.S. § 95-25.8 (2003). Two types of written authorizations are permitted:

a. When the amount or rate of the proposed deduction is known and agreed upon in advance, the authorization shall specify the dollar amount or percentage of wages which shall be deducted from one or more paychecks, provided that if the deduction is for the convenience of the employee, the employee shall be given a reasonable opportunity to withdraw the authorization;

b.  When the amount of the proposed deduction is not known and agreed upon in advance, the authorization need not specify a dollar amount which can be deducted from one or more paychecks, provided that the employee receives advance notice of the specific amount of any proposed deduction and is given a reasonable opportunity to withdraw the authorization before the deduction is made.

*Id.*; *see also* 13 N.C.A.C. 12.0305 (further providing that a wage—deduction authorization must: (1) be written; (2) be signed by the employee on or before the payday for the pay period for which the deduction is being made; (3) show the date of the signing by the employee; (4) state the reason for the deduction; and (5) if it is a specific authorization, state the specific dollar amount of the deduction).

In the present case, plaintiffs Leverette and Clark signed two initial wage deduction authorizations: "Voluntary Payroll Deduction for Van Use" and "Voluntary Payroll Deduction for Safety Equipment." The form authorizing deductions for safety equipment states:

I, _____ , do hereby voluntarily authorize BATTS to deduct from my paycheck $ 1.00 for gloves, $1.50 for Safety Glasses, and $12.00 for boots if I direct BATT'S [sic] to issue these safety related items to me. I understand that these safety related items will be mine and that I will not have to return this equipment to BATT'S [sic]. I further understand and acknowledge that the prices charged for these safety related items may change and do hereby authorize my payroll deductions for these charges.

Defendants' van transportation and safety equipment authorization forms clearly comply with the requirements of the NCWHA and associated regulations as they were: (1) in writing; (2) signed prior to the time of the deduction; (3) dated; (4) state the reason for the deduction, and (5) state the amount of the proposed deductions for the transportation and for each item of safety equipment. *See* 13 N.C.A.C. 12.0305; *Whitehead*, 167 N.C. App. at 184-85, 605 S.E.2d at 238-39; *Hyman*, 167 N.C. App. at 139, 605 S.E.2d at 258.

Plaintiffs argue that (a) plaintiffs did not know they had the right to withdraw these authorization forms; (b) the amount stated in the authorization forms was incorrect; and (c) defendants did not give three days' advance notice of their intent to make a transportation deduction. However, plaintiffs were able to withdraw the authorization forms on a daily basis. Plaintiffs were not required to ride in

**LEVERETTE v. LABOR WORKS INT'L, LLC**

[180 N.C. App. 102 (2006)]

the transportation van, and could choose at any time prior to getting on the van to take an alternate mode of transportation to the job site. In that instance, no transportation deduction was taken from that day's wages. Similarly, no employee was required to rent or purchase safety equipment, as each could either provide his own equipment or decline any job ticket on which equipment was required. The employee elected at the start of each day on which he chose to work whether to authorize defendants to take any wage deductions. Furthermore, the authorization forms signed by the employees clearly stated that the amount of the transportation and equipment charges may change. Notice of any variance in the amount of the transportation deduction was provided, in accordance with the law and prior to the taking of any increased wage deduction, by posting signs in defendants' office and in the transportation vans themselves, which plaintiffs had seen. Similarly, notice of any increase in equipment charges was provided in the form of signs posted at defendants' office location. Furthermore, defendants' forms were in compliance with N.C.G.S. § 95-25.8 and 13 N.C.A.C. 12.0305 when taking transportation deductions from plaintiffs' wages since both state and federal law allow an employer to deduct from an employee's wage, without written authorization, the reasonable cost "of furnishing [an] employee with board, lodging, or other facilities."[2] *See* 13 N.C.A.C. 12.0301 (a) and .0301 (d); 29 U.S.C. § 203(m); 29 C.F.R. § 531.32(a). Because the van transportation provided by defendants is essentially home-to-work travel not compensable under the FLSA or NCWHA as "hours worked," and not "an incident of and necessary to the employment," it constitutes "other facilities." *Id.*; *see* N.C.G.S. § 95-25.8(1); 29 C.F.R. § 531.32(a).

Plaintiffs would contend the requirement of a breathalyzer examination as a condition of employment is a "continuous use" under *Alvarez*. *See Alvarez* 546 U.S. at ——, 163 L. Ed. 2d at 305 (holding time spent waiting to doff protective gear is compensable because it occurs between the first and last principal activities of the day; however, time waiting to don the gear is a preliminary activity excluded from compensation because the Court was "not persuaded that such waiting—which in this case is two steps removed from the productive activity . . .—is 'integral and indispensable'· to a 'principal activity'

---

2. The term "other facilities" has been recognized by this Court as including "transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment." *See Whitehead*, 167 N.C. App. at 185-86, 605 S.E.2d 234, 239 (2004) (quoting 29 C.F.R. § 531.32(a)).

that identifies the time when the continuous workday begins."). However, submission to a breathalyzer exam is not an activity which plaintiffs were hired to perform and is a pre-condition to employment. If the individual failed the breathalyzer exam they were not hired to work for that day. Further, defendants did not require potential employees to arrive at their offices at any particular time. Defendants' offices generally opened their doors at 5:30 a.m. and began assigning job tickets to individuals as soon as customers requested workers. Individuals did not perform any work at defendants' office locations or while they are being transported to job sites in the transportation van. On these facts, the trial court did not err in concluding "waiting time" and "travel time" were not compensable. In addition, the trial court properly determined the meaning of "hours worked," as plaintiffs are not entitled to compensation for waiting for transportation to the job site, to put on protective equipment and to take a breathalyzer exam. As there is no genuine issue of material fact as to wage deductions, the trial court properly granted defendants' motion for summary judgment. These assignments of error are overruled.

### III

[3] Plaintiffs next argue the trial court erred in determining there was no genuine issue of material fact that Labor Works International, L.L.C., Labor Works Source-Raleigh, L.L.C., Labor Works Source-Durham, L.L.C. and Labor Works Source-Greensboro, L.L.C. were not part of an "enterprise" under N.C. Gen. Stat. § 95-25.2(18) and granting summary judgment in their favor. Plaintiff Clark contends the trial court erred in granting summary judgment in favor of the corporate defendants other than Batts because the trial court failed to consider all of these entities an "enterprise" within the meaning of the NCWHA. We disagree.

Each plaintiff was temporarily employed by the Labor Works location in Raleigh, North Carolina. No plaintiff was ever employed at any other Labor Works Source location. Fore's deposition testimony as to each of the limited liability companies ultimately depositing their funds into an account maintained by Labor Works International, L.L.C. does not give rise to an issue of fact as to whether these entities engage in related activities performed through a unified operation, or common control, for a common business purpose as required by FLSA. *See Murray v. R.E.A.C.H.*, 908 F. Supp. 337 (W.D.N.C. 1995) (holding the "operation of business in one county in Western North Carolina does not arise out of and is not connected with a commer-

cial transaction which substantially affects interstate commerce. . . . Therefore, the Court finds that the Defendant is not engaged in a business enterprise covered by the Fair Labor Standards Act."). Claims against the remaining corporate defendants (Labor Works International, L.L.C., Labor Works Source-Greensboro, L.L.C., and Labor Works Source-Durham, L.L.C.) were properly dismissed. This assignment of error is overruled. For the foregoing reasons, we need not reach the merits of defendants' cross-appeal.

Affirm.

Judges McGEE and ELMORE concur.